966 So.2d 366 (2007)
Dolan DARLING a/k/a Sean Smith, Appellant,
v.
STATE of Florida, Appellee.
Dolan Darling a/k/a Sean Smith, Petitioner,
v.
James R. McDonough, etc., Respondent.
Nos. SC04-2379, SC05-2020.
Supreme Court of Florida.
July 12, 2007.
Rehearing Denied September 26, 2007.
*369 Bill Jennings, Capital Collateral Regional Counsel, David Dixon Hendry and Mark *370 S. Gruber, Assistant CCR Counsel, Middle Region, Tampa, FL, for Appellant/Petitioner.
Bill McCollum, Attorney General, Tallahassee, FL, and Barbara C. Davis, Assistant Attorney General, Daytona Beach, FL, for Appellee/Respondent.
PER CURIAM.
Dolan Darling seeks review of an order entered in the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained below, we affirm the denial of the rule 3.851 motion for postconviction relief and deny the petition for writ of habeas corpus.
FACTS AND PROCEDURAL HISTORY
Dolan Darling was convicted of the first-degree murder of Grazyna Mlynarczyk ("Grace") and armed sexual battery. See Darling v. State, 808 So.2d 145, 153 (Fla. 2002). The jury, by a vote of eleven to one, recommended a sentence of death. See id. at 154. Following that recommendation, the trial judge sentenced Darling to death for the murder and to 256.5 months for the armed sexual battery. See id. On direct appeal, this Court affirmed Darling's convictions and death sentence. See id. at 166. In its opinion affirming the conviction, this Court detailed the facts surrounding the murder of Grace as follows:
The victim in this case, Grazyna Mlynarczyk ("Grace"), was a thirty-three-year-old Polish female living illegally in the United States. The State's first witness, Zdzislaw Raminski (known as "Jesse"), had met the victim in Poland in 1990 or 1991. Grace and Jesse developed a personal relationship, which continued when Grace moved to Orlando on September 28, 1992.
Jesse owned and operated Able Transportation, which provided shuttle service to and from the airport, and Grace was employed part-time with this enterprise. The last time Jesse saw Grace alive was on the morning of October 29, 1996, at around 9:30 [a.m]. At that time she was wearing shorts and a small shirt, as she was doing laundry in a facility at her apartment complex. Jesse did not exit his vehicle when talking with Grace only briefly that morning. She told Jesse that she had an appointment with a gynecologist later that day. Jesse gave Grace an AmSouth Bank envelope containing three hundred dollars cash in payment for work she had performed for the company during the prior week. Jesse drove away from the apartment complex and proceeded to work. Jesse again spoke with Grace around 10:15 a.m. by phone, and she indicated that she was still doing laundry, and would call him after she returned from her doctor's appointment. Although Jesse continued to telephone Grace throughout the day, he was unable to reach her again. Around 4:10 p.m., Jesse called again and was still unable to reach Grace. He became concerned that she had not telephoned him after her doctor's appointment, so he returned to her apartment complex.
Upon arriving there, he was surprised to find that the blinds to Grace's apartmentwhich she never closed during the daytimewere closed. He used his key to enter the apartment, where he found a basket with laundry in the living room, and the door to the bedroom closed. He recalled seeing no disturbed objects in the apartment. Upon entering the bedroom, however, he found *371 Grace. She was on her back on the floor, naked from the waist down, with her face near the bed and her legs inside the closet. When she did not respond to him, Jesse moved Grace to the bed, and discovered that she was cold, and had blood on her. He proceeded to call 911 for assistance and members of the fire department arrived shortly thereafter. They soon determined that Grace was dead.
Officers from the Orange County Sheriff's Office responded to the scene and secured items of evidence found in the bathroom, which included a lotion bottle, a pair of panties, and a pink throw pillow. The pillow had a blackened area and a gunshot hole through the sides. There was blood spatter on the door of the closet, and blood present in the closet area. Two AmSouth Bank envelopes were found which contained cash totaling approximately twelve hundred dollars and a shoe box was discovered which contained one thousand dollars. There was also a wallet which held fifty-eight dollars. Jewelry located in boxes appeared to be undisturbed.
An officer who had canvassed Grace's neighborhood to determine whether there were witnesses with information regarding the murder testified that he had contacted Darling on October 30, the day after the murder. Darling's apartment was located just north of Grace's apartment. In response to the investigating officer's inquiry, Darling had said that "he was working and didn't know anything of the incident."
Id. at 148-49.

The Guilt Phase
During the guilt phase, the State presented the testimony of a number of forensic experts. See id. at 149-53. Dr. William Robert Anderson of the Orlando Medical Examiner's Office testified with regard to the cause of death and the evidence of sexual assault. See id. at 149-50. Dr. Anderson testified that both the defects in the pillow recovered from the crime scene and the victim's gunshot injury to the head were consistent with the weapon being discharged in close range of the victim with the gun pressed tightly against the pillow. See id. at 149. He also testified that death would have been nearly instantaneous with consciousness lasting for not more than a few seconds after impact. See id. Dr. Anderson further testified that the condition of the victim's vaginal and rectal injuries were consistent with nonconsensual penetration. See id. at 150. He concluded that the encounter was not consensual because the degree of pain that these injuries would have caused the victim was "not consistent with consensual sex." Id.
The doctor also noted that there were seminal fluids present in the victim's vaginal area. See id. Additionally, a fingerprint analysis expert testified that the fingerprint found on the lotion bottle recovered from the crime scene was less than one year old, and matched fingerprints obtained from Darling. See id. Finally, David Baer, a DNA expert and analyst employed at the Florida Department of Law Enforcement ("FDLE") DNA crime laboratory in Orlando, testified, based on his personal testing of the DNA samples from Darling's blood sample and the vaginal swabs containing sperm taken from the victim, that Darling's DNA matched the male DNA contained in the vaginal swabs. See id. at 152. The defense did not present any evidence. See id. at 153.

The Penalty Phase
During the penalty phase, Gerald Paul Daigneault testified that Darling had shot him in the back of the head after robbing *372 him at gunpoint and carjacking his taxi. The testimony of Joanne Reed, a friend of victim Grace Mlynarczyk, was presented as victim impact evidence.
The defense presented four witnesses during the penalty phase. Deshane Clear testified that Darling had provided emotional support during her pregnancy with their daughter, and subsequently had expressed concern for their daughter and sent cards for various holidays. Verneki Butler, Darling's sister, testified with regard to the emotional and physical abuse Darling suffered at the hands of their alcoholic father as a child. Eleanor Bessie Smith, Darling's mother, testified that although Darling's father had provided for the children financially, he drank excessively and was physically and verbally abusive to both her and Darling. Psychiatrist Michael Hercov testified at length with regard to the abuse Darling suffered at the hands of his father, Darling's low IQ, and his difficulties in school. Dr. Hercov stressed the direct correlation found in psychiatric research between childhood abuse and the later commission of crimes of violence.
After deliberation, the jury recommended death by a vote of eleven to one. In sentencing Darling to death, the trial judge found two aggravating factors: (1) Darling's previous conviction for a felony involving the use or threat of violence to the person; i.e., the taxi-carjacking case that occurred about a week after the murder in the instant matter; and (2) that the capital felony was committed while the defendant was engaged in an armed sexual battery. In mitigation, the trial court found only one statutory mitigator, the defendant's age of twenty, and nineteen nonstatutory mitigators relating mostly to Darling's relationship with his family and his background as an abused child.[1] In sentencing Darling to death, the trial court noted that the aggravating circumstances outweighed the mitigating circumstances.

Direct Appeal
On direct appeal, this Court affirmed Darling's murder conviction and death sentence, denying all of Darling's claims,[2] *373 none of which are relevant to the instant postconviction appeal. See Darling v. State, 808 So.2d 145, 153 (Fla.2002). In October 2002, certiorari was denied by the United States Supreme Court. See Darling v. Florida, 537 U.S. 848, 123 S.Ct. 190, 154 L.Ed.2d 78 (2002).

Rule 3.851 Proceedings
On September 22, 2003, Darling filed a motion to vacate judgment of conviction and sentence pursuant to Florida Rule of Criminal Procedure 3.851, alleging thirty-eight claims.[3] The trial court issued an *374 order granting the State's motion to strike and summarily denied claims 11, 12, 14-34, and 36 as shell claims. The trial court issued a separate order summarily denying certain claims and set other claims for an evidentiary hearing. The claims set for evidentiary hearing were: 1, 2, 3, 4 (merged with 15), 10 (merged with 38), and 37.
At the evidentiary hearing held April 26 through April 29, 2004, and May 3 and 7, 2004, Darling presented the testimony of six witnesses. Carlton Darling, Darling's father, testified to the degree, frequency, and results of the abuse he inflicted on Darling throughout most of Darling's childhood. Mario Smith, a cousin of Darling who was previously employed as a guard at Foxhill prison in the Bahamas, testified with regard to the deplorable conditions at the prison during the time Darling was incarcerated there. Marjorie Hammock, a clinical social worker with experience in conducting biopsychosocial histories and assessments, testified that there were many mitigating themes in Darling's background which were not fully explored during the penalty phase. These included mental health issues, significant learning disabilities, a corruptive and abusive home environment, lack of emotional support, physical problems that were not addressed, and a lack of sustaining relationships.
Dr. Mark Douglas Cunningham, a clinical and forensic psychologist, discussed additional mitigating factors that were not presented during the penalty phase. He divided this additional mitigation into four colorfully named categories as follows: (1) faulty wiring (mitigating factors which pointed to neurological dysfunction); (2) parental poisoning (aspects of Darling's family functioning that were psychologically destructive); (3) sexual poisoning (factors that were corrosive to the development of a healthy sexuality); and (4) community poisoning (inadequate community guidance and intervention). Dr. Henry Dee, a clinical psychologist and clinical neuropsychologist, expressed the opinion that Darling suffered from impaired frontal lobe functioning, which would cause him to behave in uninhibited and socially unacceptable ways.
Janine Arvizu, a quality assurance consultant, testified that the FDLE DNA lab which had performed the DNA testing in the instant matter had inadequate quality *375 control and documentation procedures. The depositions of Lance McIntosh and Montico Rahming, two childhood friends of Darling, were also submitted which addressed that Darling was a good person and the abuse Darling had suffered at the hands of the Bahamian police and the prison guards at Foxhill prison. As a rebuttal witness, Christopher Smith, counsel for Darling in the prior offense (i.e. the taxi-carjacking) which was considered as an aggravating factor in the instant matter, testified that he would have handled the carjacking matter differently had he known Darling was under investigation for first-degree murder charges.
Dr. David Frank, a psychiatrist employed by the Florida Department of Corrections for the purpose of diagnosing and treating mentally ill inmates, testified, based on his examination of Darling and review of Darling's records, that Darling had a conduct disorder as a child which developed into antisocial personality disorder as an adult. Dr. Frank explained that the factors discussed by the defense psychiatric experts at trial as resulting from Darling's abuse as a child were consistent with this diagnosis.
Darling's trial counsel Francis Iennaco testified that the DNA evidence presented by the State was not challenged because Darling maintained that he was having a love affair with the victim and, therefore, there was no reason to believe that the test results were inaccurate. Iennaco also addressed, in the form of a proffer, that he had looked into Darling's prior conviction and could not find any valid basis to set aside Darling's plea in that case.
Another trial counsel for Darling testified that an investigation was conducted and that extensive mitigation with regard to Darling's background was presented during the penalty phase. This attorney also confirmed that the DNA and fingerprint evidence was not challenged because Darling asserted that he was having a love affair with the victim which would cause the presence of that evidence in the apartment. Additionally, the attorney did not order neuropsychological testing because there was absolutely no history that indicated a need for such testing. The state fingerprint expert again testified, as he did at trial, that the fingerprint found on the lotion bottle in the victim's apartment matched prints taken from Darling.[4] Finally, David Baer testified in rebuttal to the testimony of Darling's witness that the DNA results admitted at trial were reliable and valid, and addressed the concerns asserted with regard to the FDLE lab's protocol.
Subsequent to the evidentiary hearing, the trial court denied Darling's claims for postconviction relief. This appeal followed.

Habeas Corpus Proceedings
On November 1, 2005, Darling submitted a petition for writ of habeas corpus alleging four claims, as follows: (1) Darling was denied effective assistance of counsel and access to the courts in the taxi-carjacking matter; (2) Darling's counsel on direct appeal was ineffective for abandoning claims which had been raised and preserved during trial; (3) execution by lethal injection constitutes cruel and *376 unusual punishment; and (4) Darling's execution will constitute cruel and unusual punishment because he may be incompetent at the time of execution.

ANALYSIS
Investigation and Presentation of Mitigating Evidence
Darling asserts that trial counsel was ineffective in the investigation and presentation of mitigation during the penalty phase.
Following the United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that
[a] claim of ineffective assistance of counsel, to be considered meritorious, must include two general components. First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Downs v. State, 453 So.2d 1102 (Fla. 1984). A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986). The alleged ineffective assistance of counsel claim is a mixed question of law and fact, subject to plenary review based on Strickland. See Stephens v. State, 748 So.2d 1028, 1032 (Fla.1999). Under this standard, the Court conducts an independent review of the trial court's legal conclusions, while giving deference to the trial court's factual findings. See id. at 1032-33.
Related to the deference given to the trial court's factual findings when undertaking an ineffective assistance of counsel analysis is the idea that the trial court's determination of the credibility of witnesses and the weight accorded to evidence will similarly be given deference. This Court recently explained that "[s]o long as the [trial court's] decisions are supported by competent, substantial evidence, this Court will not substitute its judgment for that of the trial court on questions of fact and, likewise, on the credibility of the witnesses and the weight to be given to the evidence." Arbelaez v. State, 898 So.2d 25, 32 (Fla.2005) (quoting Sochor v. State, 883 So.2d 766, 781 (Fla. 2004)). This deference is a recognition of "the trial court's superior vantage point in assessing the credibility of witnesses and in making findings of fact." Porter v. State, 788 So.2d 917, 923 (Fla.2001).
There is a strong presumption that trial counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690, 104 S.Ct. 2052. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. See id. at 689, 104 S.Ct. 2052. The defendant bears the burden to overcome the presumption "that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689, 104 S.Ct. 2052 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83(1955)). *377 "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689, 104 S.Ct. 2052.
Darling has failed to establish that the presentation of mitigation by trial counsel during the penalty phase was deficient. The testimony presented during the postconviction evidentiary hearing may generally be described as only a more detailed presentation of the mitigation that was actually presented during the penalty phase. Nonetheless, the investigation and presentation of mitigation by trial counsel here was not legally deficient under the Strickland standard.
Darling argues that trial counsel was ineffective in failing to order a neuropsychological assessment when there was a clear indication in the records relating to Darling's life and from interviews with various witnesses that Darling may suffer from brain damage. During the evidentiary hearing, Marjorie Hammock stated that although she was admittedly not qualified to diagnose brain damage, the multiple head injuries, severe beatings, nosebleeds, headaches, and stuttering experienced by Darling as a child might give some indication of neurological damage. Dr. Henry Dee was of the view that Darling did suffer from frontal lobe damage. However, in preparing for the penalty phase, trial counsel relied on the evaluation of psychiatric expert Dr. Michael Hercov. Darling's trial counsel confirmed that he relied on the evaluation performed by his expert, Dr. Hercov, and would not have ordered a neuropsychological evaluation absent a recommendation by Dr. Hercov. Also, Dr. David Frank established during the evidentiary hearing that Darling's irritability and changed behavior was the result of being abused rather than organic brain damage. Dr. Frank added that stuttering after being abused is a normal response produced by fear and anxiety. Dr. Frank also added that Darling's impulsivity, frequent fights, and poor planning were all indicative of the diagnosis that Darling had antisocial personality disorder.
This Court has established that defense counsel is entitled to rely on the evaluations conducted by qualified mental health experts, even if, in retrospect, those evaluations may not have been as complete as others may desire. See State v. Sireci, 502 So.2d 1221, 1223 (Fla.1987). Even if the evaluation by Dr. Hercov, which found no indication of brain damage to warrant a neuropsychological workup, was somehow incomplete or deficient in the opinion of others, trial counsel would not be rendered ineffective for relying on Dr. Hercov's qualified expert evaluation. See id. Therefore, trial counsel was not ineffective for failing to order a neuropsychological evaluation.
Although Darling further asserts that trial counsel was also ineffective for failing to present the testimony of Darling's father, Carlton, during the penalty phase, as noted by the trial court, the substance of Carlton's testimony was actually presented through other witnesses during the penalty phase. Dr. Hercov and Darling's mother and sister testified during the penalty phase with regard to the abuse Darling suffered at the hands of Carlton. Although as an afterthought Carlton provided a more detailed account with regard to the abuse, this Court has held that even if alternate witnesses could provide more detailed testimony, trial counsel is not ineffective for failing to present cumulative evidence. See Gudinas v. State, 816 So.2d 1095, 1106 (Fla. 2002); Sweet v. State, 810 So.2d 854, 863-64 (Fla.2002). Therefore, trial counsel was not ineffective for failing to call Carlton as a witness during the penalty phase to present evidence which was generally presented by others.
*378 The trial court noted in the order denying postconviction relief that the testimony of Mario Smith, Lance McIntosh, Montico Rahming, and Marjorie Hammock with regard to the conditions at Foxhill prison "was really a general comment on existing conditions, and did not conclusively establish that Defendant was beaten while incarcerated there." Although trial counsel failed to locate and present the testimony of three of these witnesses at the penalty phase, trial counsel cannot be deemed deficient for failing to present mitigation not supported by the record. Additionally, even if trial counsel could be deemed deficient for failing to attempt to establish this mitigation, Darling cannot establish prejudice on this point because the trial court found that the evidentiary hearing testimony in this regard was inconclusive.
With regard to the testimony of psychiatric expert Dr. Mark Cunningham, contrary to Darling's assertions, the trial court did not dismiss or discount Dr. Cunningham's testimony. Instead, the trial court simply held that "Dr. Cunningham's testimony added little or nothing new; instead, it was merely a `cumulative analysis' of the testimony previously presented at the penalty phase." A review of both the penalty phase and evidentiary hearing transcripts reveals that the trial court has accurately characterized Dr. Cunningham's testimony. Although Dr. Cunningham presented various elements from Darling's background in four colorfully named categories, a review of his testimony reveals that many of the individually identified mitigating factors discussed by Dr. Cunningham were redundant and cumulative of evidence presented during the penalty phase. For example, Dr. Cunningham listed mitigating factors relating to Carlton Darling's emotional and physical abuse of both Darling and his mother as six different factors listed under three of the four broad categories of mitigation identified by Dr. Cunningham. The trial court accurately identified this evidence as cumulative. In addition to being cumulative, as discussed above, the testimony of Dr. Cunningham was also redundant, and Dr. Cunningham simply restated the same mitigation numerous times in slightly varying manners. As noted, trial counsel is not ineffective for failing to present cumulative evidence. See Gudinas, 816 So.2d at 1106; Sweet, 810 So.2d at 863-64. To the extent that anything presented by Dr. Cunningham may not have been cumulative of evidence presented during the penalty phase, this Court has stated that "[c]ounsel cannot be deemed ineffective . . . simply because he relied on what may have been a less than complete pretrial psychiatric evaluations." Sireci, 502 So.2d at 1223. Trial counsel was not deficient by relying on the psychiatric evaluation of a qualified expert, Dr. Hercov.
Therefore, although Darling did present additional witnesses during the evidentiary hearing who testified with regard to his background with somewhat greater specificity than that presented during the penalty phase, trial counsel was not ineffective for failing to present this largely cumulative evidence. Additionally, to the extent that any of the evidence relating to Darling's mental health and brain functions was not cumulative, trial counsel was not ineffective for relying on the evaluation by a qualified expert. Darling has failed with regard to this claim to establish ineffective assistance of trial counsel during the penalty phase under the Strickland analysis.
The Taxi-Carjacking Case
In sentencing Darling to death, the trial court found as an aggravating factor that Darling had been previously convicted of a felony involving the use of violence to the person with regard to a *379 taxi-carjacking committed by Darling about a week after the murder in the instant matter during which Darling shot a taxi driver in the head before stealing his vehicle. Darling raises several postconviction claims and one habeas claim with regard to this prior conviction.
In the first claim, Darling essentially asserts that trial counsel LeBlanc and Iennaco provided ineffective assistance of counsel during the penalty phase by failing to adequately investigate Darling's prior violent felony conviction and by failing to intervene in the then-pending postconviction proceedings in that other case. In the order denying postconviction relief in the instant case, the trial judge denied this claim because it was insufficiently pled in the 3.851 motion and was only raised in written closing arguments after the conclusion of the evidentiary hearing. As the trial court stated in the order denying postconviction relief, defense counsel conceded at the evidentiary hearing that this claim was not specifically pled in the 3.851 motion, as is required under the rule. Therefore, the trial court properly summarily denied this claim.
Notwithstanding the failure of pleadings, this claim is also meritless. Darling's assertions with regard to the ineffectiveness of counsel in the instant case due to a failure to investigate his prior violent felony conviction and for a failure to intervene in the postconviction proceedings in the taxi-carjacking case largely hinge on an argument that Christopher Smith, trial counsel in that taxi-carjacking case, provided ineffective assistance. However, a review of the 3.850 evidentiary hearing in the taxi-carjacking matter, as well as the proffered testimony of Christopher Smith at the evidentiary hearing in this case, reveal that Smith's representation was not ineffective. In his 3.850 motion and at the evidentiary hearing addressing the taxi-carjacking matter, Darling alleged three bases for Smith's ineffective assistance of counsel: (1) Smith failed to investigate and prepare a voluntary intoxication defense; (2) Smith badgered Darling into accepting the plea; and (3) Smith failed to investigate the facts of the case which would have revealed that the victim could not identify Darling. With regard to the voluntary intoxication defense, Smith testified that he did not recall discussing it with Darling, and that even if he had, there would be a problem with claiming such a defense because even if the attempted first-degree murder charge, the only specific intent charge involved, was reduced downward to attempted second-degree murder, Darling still would have been facing a far greater sentence than was acquired under the plea deal. With regard to the allegation that Darling was badgered into accepting the plea, Darling's own testimony at the evidentiary hearing revealed that this allegation stemmed only from the fact that Smith correctly informed him that he would be facing twenty-two years to life if he proceeded to trial on the taxi-carjacking charges and was convicted. As to the allegation that the victim could not identify Darling, Smith confirmed this fact and said that the evidence against Darling consisted of the fact that Darling was caught with the weapon used in the crime, that a witness who knew Darling identified him as the perpetrator, and that Darling confessed to the crime. Although the trial court stated at the conclusion of the hearing that the motion would be considered as a request for mitigation of sentence, because Darling indicated that all he was asking for was a reduction in sentence, the trial court did address the merits of Darling's ineffective assistance of counsel claim. The trial court noted that Darling had failed to prove such a claim because counsel Smith was able to acquire a plea deal for 10.5 years in the face of overwhelming *380 evidence of Darling's guilt on charges that would have carried a sentence of twenty-two years to life.
Darling simply cannot meet his burden on either prong of the test announced in Strickland. Based on Smith's testimony at the evidentiary hearing in the taxi-carjacking case, his representation was not deficient on any of the points raised in Darling's 3.850 motion. Smith had a legally valid strategic reason for not asserting a voluntary intoxication defense; the defense would only have potentially reduced one of the three charges and ultimately would not have resulted in a sentence less severe than that provided by the plea bargain. Darling admitted under questioning by both the trial court and the State that his claim that Smith badgered him into accepting the plea was based only on the fact that Smith honestly informed him that he was facing twenty-two years to life if he was convicted at trial. With regard to the claim that investigation would have revealed that the victim could not identify him, Darling admitted during cross-examination that a witness who knew him prior to the crime had identified him. Even if, however, Darling had proven that Smith was deficient on any of these points, he still would have failed the prejudice prong because, as noted by the trial court during the evidentiary hearing, the evidence against Darling in the taxi-carjacking matter was overwhelming.
The appellant failed to allege any deficiency in Christopher Smith's direct representation in the taxi-carjacking case, and, therefore, there is no basis to support an argument that trial counsel in this case were ineffective for failing to intervene in the taxi-carjacking matter. Darling asserts that Smith's proffered testimony during the evidentiary hearing establishes that he was ineffective in the taxi-carjacking case. However, the United States Supreme Court has stated that a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. See Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Smith's testimony that had he known about the murder charge, he would have handled the case differently does not establish any deficiency in his performance because that statement was made only in hindsight and discounts Smith's perspective at the time of his representation of Darling. See id. Trial counsel here, Iennaco and LeBlanc, could not have been deficient for failing to intervene in a meritless 3.850 motion. Further, even if they could somehow have been deemed deficient on that basis, Darling cannot show prejudice because he has not alleged any valid avenue for attacking the plea in the taxi-carjacking case.
Darling additionally asserts that either Christopher Smith or trial counsel in this case should have filed a motion to set aside his plea on the basis that his plea form did not inform him that his conviction in the taxi-carjacking matter could be used as an aggravating factor in the subsequent murder charge. However, the plea in the taxi-carjacking matter was entered on April 3, 1997, and Darling was not even indicted in the instant case until two months later on June 12, 1997. Neither the trial court nor counsel would have had reason to know that first-degree murder charges against Darling were imminent at the time of his plea colloquy. Additionally, Florida Rule of Criminal Procedure 3.172, which governs the acceptance of pleas, does not mention a required notice to defendants entering pleas that a conviction for a violent felony may be used as an *381 aggravator in any subsequent capital murder trial.
Darling also alleges that the trial court in the taxi-carjacking matter erred in refusing his request for postconviction counsel. Claims as to trial court error in the taxi-carjacking case are beyond the jurisdiction of this Court in the present case. Darling had opportunity to appeal the trial court's determination of his rule 3.850 motion in the taxi-carjacking case to the Fifth District Court of Appeal.
In an additional postconviction claim here, Darling asserts that the trial court erred in refusing during the evidentiary hearing to accept the proffered testimony of Christopher Smith with regard to the his representation of Darling in the taxi-carjacking matter. As with the first postconviction claim with regard to the taxi-carjacking matter, this claim is procedurally barred because it was not sufficiently pled. Contrary to Darling's assertions in the instant appeal, postconviction counsel agreed that this claim was not specifically pled in the 3.851 motion. Therefore, as discussed, the trial court properly summarily denied this claim. Additionally, and as also discussed, Christopher Smith's proffered testimony did not support the assertion that trial counsel in the instant case was ineffective for failing to investigate or intervene in the meritless rule 3.850 postconviction proceedings in the taxi-carjacking case.
Lastly, Darling asserts that this Court should exercise its habeas corpus jurisdiction to address the postconviction claims raised in the rule 3.850 motion filed in the taxi-carjacking case because Darling has not had an opportunity to have those claims addressed by a court. However, contrary to Darling's assertions, his postconviction claims in the taxi-carjacking matter were addressed by the trial court during the evidentiary hearing in that matter. As discussed, a review of both the evidentiary hearing in the taxi-carjacking case and the proffered testimony of Christopher Smith during the evidentiary hearing in the instant matter reveal that Darling's ineffective assistance of counsel claims against Smith were meritless, and their lack of merit was addressed by Judge MacKinnon during the evidentiary hearing in the taxi-carjacking matter. Therefore, there is no reason for this Court to exercise its jurisdiction under the extraordinary writ of habeas corpus on this matter.
Additionally, this Court has held that "it is well settled that habeas corpus cannot be used as a substitute for a motion to quash or for an appeal." Adams v. Culver, 111 So.2d 665, 668 (Fla.1959). Darling is attempting to appeal the decision of the trial court on his postconviction motion in the taxi-carjacking case through the instant habeas petition. This is an improper basis for this Court's habeas jurisdiction. Therefore, relief on this claim is denied because the claim is both meritless and inappropriate for habeas review.
DNA Evidence Discovery Violation
After a discovery violation with regard to the DNA evidence was revealed, the trial court directed Ms. Arvizu, Darling's DNA expert, to conduct an on-site audit of the FDLE lab that had conducted the DNA testing in the instant case. During this audit, Ms. Arvizu obtained many documents pertinent to her analysis of the DNA testing procedures in this case. Subsequent to the audit, Ms. Arvizu testified briefly during the evidentiary hearing the following day, after which the trial court permitted her time during which to submit a final written report on her conclusions.
Although Darling acknowledges that Ms. Arvizu was eventually given all the materials necessary to her analysis and was provided *382 with an opportunity to fully review those materials and submit a final report to the trial court, Darling now alleges that the trial court erred in not allowing postconviction counsel an opportunity to review those additional materials to determine if they supported any additional claims. A review of the postconviction record reveals that postconviction counsel did not request leave to amend the 3.851 motion in light of these additional materials. Additionally, Darling does not allege any specific additional claim arising from these materials in the instant appeal. Therefore, this claim is denied as procedurally barred because postconviction counsel did not raise the issue of the need for additional time to review the additional materials from the FDLE crime lab in the trial court below. See Bertolotti v. Dugger, 514 So.2d 1095, 1096 (Fla.1987) ("In order to preserve an issue for appellate review, the specific legal argument or ground upon which it is based must be presented to the trial court."). Additionally, this claim is denied as insufficiently pled because Darling alleges no additional facts or circumstances revealed by these additional materials that would require leave to amend the 3.851 motion.
Failure to Challenge DNA Evidence
Darling asserts that trial counsel was ineffective for failing to challenge the DNA evidence offered by the State during trial, noting that the testimony of Ms. Arvizu during the evidentiary hearing revealed that the FDLE laboratory did not follow proper quality assurance procedures.
Darling can prove neither the deficiency nor the prejudice prong of the Strickland test with regard to this issue. During the evidentiary hearing, trial counsel Iennaco and LeBlanc testified that although they had considered challenging the DNA results in this case, they decided not to do so after Darling informed counsel LeBlanc that he was having an affair with the victim. They reasoned that it would be a waste of resources to challenge the DNA results when Darling admitted that his DNA would be in the victim. Therefore, trial counsel's decision not to challenge the DNA test results constitutes trial strategy. This Court has established that "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." Howell v. State, 877 So.2d 697, 703 (Fla.2004) (quoting Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000)). The defendant carries the burden to overcome the presumption of effective assistance: "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (quoting Michel, 350 U.S. at 101, 76 S.Ct. 158). Given Darling's statements that he and the victim were having a love affair at the time of the murder, it was reasonable trial strategy for counsel not to challenge forensic evidence that was consistent with this position. Additionally, performance by trial counsel cannot be viewed as deficient on this point because, despite this valid strategic reason for not challenging the DNA results, trial counsel did challenge the DNA test results from a statistical standpoint with regard to the statistical validity of using various population subset databases which were not specifically developed using the DNA of people of Bahamian origin. See Darling, 808 So.2d at 159-60.
Ms. Arvizu's quality assurance protocol testimony does not change the fact that trial counsel had a valid strategic basis for not challenging the DNA results. Additionally, as noted by the trial court in the *383 order denying postconviction relief, Ms. Arvizu admitted that she was only qualified to critique the laboratory protocol used in this case and was not at all qualified to challenge the actual test results. Therefore, the trial court correctly concluded that Ms. Arvizu's testimony would not have excluded or undermined the reliability of the DNA test results.
Additionally, even if trial counsel were deficient for failing to challenge the DNA evidence, Darling cannot satisfy the prejudice prong. The trial court concluded that Ms. Arvizu's conclusions that the FDLE laboratory utilized inadequate quality assurance measures would not have undermined the DNA results admitted at trial. Darling has not and cannot establish that he was prejudiced by trial counsel's failure to mount such an attack.
Therefore, relief on this claim is denied.
Failure to Challenge Fingerprint Evidence
Contrary to Darling's assertion, trial counsel was not ineffective for failing to object on the basis of the best evidence rule with regard to the admission of a photograph of a latent fingerprint on the lotion bottle that was found in the victim's apartment because such an objection would have been meritless. "The best evidence rule, codified in section 90.952, Florida Statutes (2005), provides that `[e]xcept as otherwise provided by statute, an original writing, recording, or photograph is required in order to prove the contents of the writing, recording, or photograph.'" England v. State, 940 So.2d 389, 400 (Fla. 2006), cert. denied, ___ U.S. ___, 127 S.Ct. 1916, 167 L.Ed.2d 571 (2007). A Florida court has explained that
Most of the time the best evidence rule is not applicable to photographs because the contents of the photograph are not being proved. Photographs are commonly used to explain the testimony of the witness. The photographs are not offered to prove their contents. The contents of a photograph are proved only in cases involving such matters as copyright and defamation.
Harris v. State, 755 So.2d 766, 767 (Fla. 4th DCA 2000) (quoting Charles W. Ehrhardt, Florida Evidence § 951.2 (1995 ed.)). In the instant case, the photograph of the latent fingerprint found on the lotion bottle was offered to explain the testimony of a fingerprint analysis expert, who testified that the fingerprint found on the lotion bottle recovered from the crime scene was less than one year old and matched fingerprints obtained from Darling. The admission of the photograph did not violate the best evidence rule because the photograph was used to aid in the testimony of the fingerprint analysis expert, and not to prove its contents. Therefore, trial counsel was not ineffective for failing to raise this meritless best evidence objection, see Raleigh v. State, 932 So.2d 1054, 1064 (Fla.), cert. denied, ___ U.S. ___, 127 S.Ct. 183, 166 L.Ed.2d 128 (2006), and relief on this claim is denied.
Individualized Sentencing
Contrary to the assertions of Darling, trial counsel was not ineffective for failing to object to permissible prosecutorial and judicial comments. As the trial court noted in the order summarily denying certain postconviction claims, the prosecutorial comments that Darling challenges in the instant appeal were merely intended to convey to the jury that the mitigation alleged by the defense had no relationship to the crime charged. The prosecutorial comment at issue with regard to this claim was made during closing argument at the penalty phase and was argued as follows:
In the instructions in a little bit the judge is going to give you a definition *384 you can use in deciding whether something is mitigating. As I said, it's up to you, mitigating circumstances are up to you to decide whether they're mitigating or not.
The judge is going to tell you that these mitigating circumstances are these factors, including any aspect of the defendant's life which may be considered as attenuating or reducing the degree of moral culpability for the offense. That's what you have to think of in terms of is there anything mitigating about the defendant's age that attenuates or reduces the degree of mental or emotional culpability for the offense? No, there just isn't. That's not a mitigating circumstance. I submit that you should disregard it.
The second area is basically allows you to consider any aspect of the defendant's character, record, background, or any circumstance of the offense as possible mitigation.
First of all, there is no circumstance of this offense, I submit, that is remotely mitigating or which remotely attenuates or reduces the degree of moral culpability. Nothing.
This Court has established that the weight to be assigned mitigating circumstances is related to whether the mitigator reduces the defendant's degree of moral culpability for the crime. See Hall v. State, 742 So.2d 225, 227 (Fla.1999). During the trial in this case, the prosecutor simply asserted, consistent with this precedent, that the mitigation advanced did not reduce Darling's degree of moral culpability for the murder at issue. As mentioned above, counsel is not ineffective for failing to raise a meritless objection. See Raleigh, 932 So.2d at 1064. Therefore, trial counsel was not ineffective for failing to object to these prosecutorial comments.
Similarly, the jury instruction and the passage from the sentencing order quoted by Darling in the instant appeal do not demonstrate that the trial court improperly held that mitigation not related to the offense should be given no weight. The instruction that "mitigating circumstances are those factors . . . which may be considered as extenuating or reducing the degree of moral culpability for the offense" is consistent with precedent from this Court characterizing mitigation in this manner. See Hall, 742 So.2d at 227. Similarly, the statement in the sentencing order that Darling's childhood abuse did not diminish his moral culpability for the murder was also consistent with this precedent. Neither of these examples indicates that the mitigation was given no weight. On the contrary, the sentencing order clearly indicates that the trial court found the mitigation advanced by the defense to exist and simply assigned most of that mitigation slight or little weight. The trial court did consider all mitigation advanced. Additionally, these claims of judicial error could and should have been raised on direct appeal and are therefore procedurally barred. See Robinson v. State, 913 So.2d 514, 524 n. 9 (Fla.2005) (holding that a claim of trial court error is procedurally barred on a postconviction appeal because it should have been raised on direct appeal).
Therefore, relief on this claim is denied both as to the ineffective assistance of counsel aspect and as to the trial court error.
Comments With Regard to Sentencing Recommendation
During voir dire, in response to a statement by the prosecutor that, "under some circumstances to follow the law, the [sic] death is the appropriate vote you should make," venireperson Adams responded that "it sounds like I would either *385 vote for the death penalty or I would break the law. I don't think I should be put in that position." As the prosecutor began to repeat his statement implying that the law sometimes required the death penalty, defense counsel objected on the basis that the prosecutor was misstating the law. At that point, the trial court sustained the objection, informed the jury that the penalty phase only occurs if it first unanimously finds the defendant guilty beyond a reasonable doubt, and noted with regard to the penalty phase that
the jury will hear evidence and would be given a series of factors to weigh. And the jury's decision would be whether the mitigating factors outweigh the aggravating factors. And then to recommend to the court whether the sentence should be a sentence of death or a sentence of life in prison. That decision does not have to be a unanimous decision, and the vote is not binding on the judge, although it is [sic] carries great weight.
At this point the court gave both parties the opportunity to object to this characterization of the penalty phase, and neither party objected. The prosecutor subsequently stated:
In order to be a juror in any kind of case you have to take an oath in the beginning to follow the law, wherever it leads you.
In a case of this type, the law might lead as you analyze it to vote for death. Question for you is, could you take an oath to follow the law, knowing that it might result in your voting to impose the death penalty?
Trial counsel did not object further at this point. Neither did trial counsel object later during voir dire when the prosecutor, in response to a statement by venireperson Ramos that she could not vote for the death penalty, asked:
Could you take an oath to follow the law if it meant that you might be compelled to vote to impose death, if that's what the law called for?
Darling alleges that trial counsel was ineffective for failing to object to these two comments which followed the court's curative instruction.
Darling states an arguable basis for a finding of deficiency of trial counsel with regard to these prosecutorial comments. This Court has repeatedly held that comments to the effect that if the aggravators outweigh the mitigators, a recommendation of a death sentence is mandatory, misstate the law. See Franqui v. State, 804 So.2d 1185, 1192-93 (Fla.2001); Brooks v. State, 762 So.2d 879, 903 (Fla. 2000); Henyard v. State, 689 So.2d 239, 250 (Fla.1996); Garron v. State, 528 So.2d 353, 359 n. 7 (Fla.1988). Therefore, it is arguable that trial counsel was deficient in failing to object to the two prosecutorial statements that death is sometimes required by the law, which followed the initial objection and the court's curative instruction.
However, the cases cited by Darling do not support a finding of prejudice resulting from this deficiency. In Henyard, this Court held that improper prosecutorial comments such as the comments in this case constituted harmless error because the comments occurred only three times during a lengthy voir dire, and the trial court did not repeat the misstatements of the law during the jury instructions given just prior to deliberations. See Henyard, 689 So.2d at 250. Similarly, in Franqui, this Court held that the defendant was not prejudiced by trial court comments which misstated the law as requiring a recommended sentence of death if the aggravators outweighed the mitigators because the jury instructions prior to deliberations properly stated the law, and the jurors *386 were given an additional instruction that the weighing process was not a simple counting process, but instead a reasoned judgment of the appropriate sentence in light of the nature of the aggravating and mitigating factors. See Franqui, 804 So.2d at 1193. The facts in the instant case are less egregious but somewhat analogous to those in both Henyard and Franqui. As in those cases, following the improper prosecutorial comments during voir dire, the court here properly instructed the jury with regard to the weighing process involved in deciding what sentence to recommend, as follows:
The sentence that you recommend to the court must be based on the facts as you find from the evidence and the law. You should weigh the aggravating circumstances against the mitigating circumstances, and your advisory sentence must be based on these considerations.
The weighing of aggravating and mitigating circumstances is not just a counting process. You are free to assign whatever weight you find appropriate to the aggravating and mitigating circumstances which are proved, and then make you own judgment about the appropriate penalty in light of the weighing process.
These instructions are analogous with those that this Court determined to be sufficient to preclude a finding of prejudice based on an earlier misstatement of the law in Franqui. The cases in which this Court has found that statements similar to those at issue in this case constituted reversible error are clearly distinguishable because those cases addressed the cumulative effects of numerous improper prosecutorial comments. See Brooks, 762 So.2d at 898-905 (holding that numerous instances of improper prosecutorial comment, including improper arguments with regard to merged aggravators; improper statements referring to mitigation as "flimsy" and "phantom"; and a personal attack on the credibility of defense counsel, constituted reversible error when "[v]iewed in totality"); Garron, 528 So.2d at 358-59 (finding reversible error for egregious prosecutorial misconduct which included impermissible statements in violation of the rule against placing the jury in the position of the victim, statements that the death penalty was required, and statements that the victim was screaming out for punishment). The frequency and type of improper prosecutorial comments in the instant case are far more analogous to the cases in which this Court has not found reversible error. Therefore, although trial counsel may have been deficient in failing to object to the improper prosecutorial comments here, Darling was not prejudiced by this deficiency, and the second prong of Strickland is not satisfied.
Abandoned Claims
Darling asserts in his habeas petition that he was denied effective assistance of counsel on direct appeal because counsel abandoned claims which had been raised and preserved during the trial. Darling also asserts that although appellate counsel claimed that the incomplete record on appeal violated due process and equal protection because the case could not be adequately reviewed, appellate counsel was ineffective in failing to argue the substance of several claims for appellate relief. These claims include: (1) that the aggravating circumstance of the crime committed during the commission of a felony was an inherent element of a conviction and, therefore, constituted an "automatic" aggravator; (2) that Florida's capital sentencing statute is unconstitutional because it only requires a bare majority vote to recommend a death sentence; (3) that the penalty jury should have been required to furnish findings of fact; (4) that Florida's *387 capital sentencing statute is unconstitutional for failing to provide adequate guidance to the jury in the finding of sentencing circumstances; and (5) that the State should have been compelled to notify the defendant of what aggravating factors the State intended to prove at the penalty phase.
Darling's claim that the absence of a complete record on direct appeal precluded the meaningful consideration of his appellate claims was raised and rejected by this Court on direct appeal. See Darling, 808 So.2d at 163. To the extent that Darling now alleges that he received ineffective assistance of direct appeal counsel because counsel on direct appeal failed to argue the substance of the motions that were addressed in the missing portions of the appellate record, Darling does not allege a sufficient claim for ineffectiveness under the Strickland standard. Four of the claims Darling alleges his counsel was ineffective for not raising are premised on the United States Supreme Court decisions in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). This Court has repeatedly and consistently rejected claims that Florida's capital sentencing scheme is unconstitutional under Ring and Apprendi. See Jones v. State, 845 So.2d 55, 74 (Fla.2003); King v. Moore, 831 So.2d 143, 144-45 (Fla.2002); Bottoson v. Moore, 833 So.2d 693, 694 (Fla. 2002). Darling's claim with regard to the aggravating circumstance that the crime was committed during the course of a specified felony constitutes an unconstitutional "automatic" aggravator has been repeatedly rejected by this Court. See Davis v. State, 928 So.2d 1089, 1132 (Fla. 2005) (citing Ault v. State, 866 So.2d 674, 686 (Fla.2003); Hitchcock v. State, 755 So.2d 638, 644 (Fla.2000); Blanco v. State, 706 So.2d 7, 11 (Fla.1997)), cert. dismissed, 547 U.S. 1053, 126 S.Ct. 1649, 164 L.Ed.2d 357, and cert. denied, ___ U.S. ___, 127 S.Ct. 206, 166 L.Ed.2d 166 (2006). This Court has repeatedly held that counsel cannot be deemed ineffective for failing to raise a meritless claim. See Jones, 845 So.2d at 73-74 (citing Johnson v. Singletary, 695 So.2d 263, 266-67 (Fla.1996)). Therefore, appellate counsel was not ineffective for failing to raise these claims.
Claims Raised for Preservation Purposes Only
Darling raises four claims in the instant appeal which he concedes are being presented for preservation purposes only, as follows: (1) trial counsel was ineffective for failing to object to comments by the trial court that diminished the jury's sense of responsibility towards sentencing in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); (2) Florida's capital sentencing scheme violates Darling's Sixth Amendment right and his right to due process under the holding of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); (3) a habeas claim that execution by lethal injection constitutes cruel and unusual punishment;[5] and (4) a habeas claim that Darling's execution will constitute cruel and unusual punishment because he may be incompetent at the time of the execution. This Court has considered and denied claims identical to these on numerous occasions. See, e.g., Brown v. State, 721 So.2d 274, 283 (Fla.1998) (holding that the standard jury instructions fully advise the jury of the importance of its role, correctly state the law, do not denigrate the role of the jury, and do not violate Caldwell); Johnson v. State, 904 So.2d 400, 412 (Fla. *388 2005) (holding that Ring does not apply retroactively in Florida); Hill v. State, 921 So.2d 579, 583 (Fla.2006) (rejecting a claim that execution by lethal injection constitutes cruel and unusual punishment); Thompson v. State, 759 So.2d 650, 667 n. 12 (Fla.2000) (citing Provenzano v. State, 751 So.2d 37 (Fla.1999)) (holding that a postconviction claim that the defendant is not competent to be executed is not ripe for review). Therefore, these claims are summarily denied.

CONCLUSION
For the reasons stated above, the denial of Darling's rule 3.851 motion is affirmed and the petition for writ of habeas corpus is denied.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] The nineteen nonstatutory mitigating facts were: (1) defendant's behavior at trial was acceptable (little weight); (2) defendant has an IQ of 85 (some weight); (3) defendant believes in God (slight weight); (4) defendant was and is a caring son to his mother (some weight); (5) defendant is a caring father to his daughter, and she will need his love and encouragement in her life (moderate weight); (6) defendant was an abused child (most weighty of the mitigating factorsdue consideration); (7) defendant has an alcoholic father (considered with factor 6); (8) defendant was never violent toward his mother or girlfriend (considered with factor 4); (9) defendant had no father figure or male role model (considered with factor 6); (10) defendant sent cards for holidays and birthdays to his family members (slight weight); (11) defendant was and is a concerned brother (slight weight); (12) defendant has a child who will not have a father if defendant is executed (considered with factor 5); (13) defendant has a good employment history (slight weight); (14) defendant was not exposed to a normal mother/father relationship as a result of his father's philandering (considered with factor 6); (15) defendant's mother and father were never married, and this caused defendant embarrassment during his childhood (considered with factor 6); (16) defendant is a human being (not recognized as a separate mitigating factor); (17) defendant has the love and support of his family (slight weight); (18) defendant has been unwavering in his declaration of innocence (slight weight); and (19) if defendant is sentenced to life in prison, he will be isolated from his friends and family who reside in a foreign country (moderate weight).
[2] On direct appeal, Darling asserted:

[T]he trial court reversibly erred in (1) denying Darling's motion for judgment of acquittal; (2) admitting DNA evidence; (3) not allowing defense counsel to comment on the State's failure to exclude other suspects; (4) limiting Darling's voir dire examination during jury selection; (5) denying Darling's requested instruction regarding circumstantial evidence; (6) precluding defense counsel's rebuttal closing argument where the State had waived its closing argument; (7) refusing to allow Darling to argue residual doubt as a mitigator; and (8) denying Darling's requested special penalty phase jury instructions. Additionally, Darling asserted that (9) the absence of a complete record on appeal deprived him of adequate appellate review; (10) his death sentence is disproportionate; and (11) his death sentence violates the Vienna Convention on Consular Relations, 596 U.N.T.S. 261 (Dec. 24, 1969) (the "Vienna Convention").
Darling, 808 So.2d at 155 n. 10.
[3] The claims, as stated in the motion, were: (1) Darling was denied due process and equal protection because access to certain records pertaining to Darling's case, which are in the possession of State agencies, have been withheld; (2) trial counsel was ineffective for failing to have a biased juror excused for cause or through the use of a preemptory strike; (3) trial counsel was ineffective for failing to object to the admission at trial of a photograph of a latent fingerprint found on a lotion bottle obtained from the victim's apartment; (4) trial counsel was ineffective during the penalty phase for failing to present evidence with regard to Darling's mental state; (5) trial counsel was ineffective for failing to object to improper comments, questions, and instructions that unconstitutionally diluted the jury's sense of responsibility towards sentencing; (6) trial counsel was ineffective for failing to object to erroneous jury instructions that limited the mitigation that could be considered by the jury; (7) trial counsel was ineffective for failing to object to improper closing argument and erroneous jury instructions that caused the jury to presume that anything but a recommendation of death would be unlawful; (8) trial counsel was ineffective for failing to object to improper prosecutorial comments that a recommendation of death was legally required under certain circumstances; (9) trial counsel was ineffective for failing to obtain an adequate mental health evaluation; (10) Darling's convictions are materially unreliable due to cumulative ineffective assistance of counsel, the withholding of exculpatory or impeachment material, newly discovered evidence, or improper rulings of the trial court; (11) Darling's convictions are constitutionally unreliable based on newly discovered evidence; (12) Darling was deprived his right to due process because the State withheld material and exculpatory evidence; (13) trial counsel was ineffective during voir dire; (14) trial counsel was ineffective for failing to object to improper prosecutorial comments that denied Darling an individualized and reliable sentencing; (15) trial counsel was ineffective during the penalty phase for failing to adequately investigate and present mitigation, for failing to provide mental health experts with the mitigation, and for failing to adequately challenge the State's case; (16) Darling is innocent of the death penalty; (17) Darling was absent from critical stages of the trial; (18) trial counsel was ineffective for failing to object to improper penalty phase jury instructions which impermissibly shifted the burden of proof; (19) the trial court improperly instructed the jury on the standard by which they should judge expert testimony; (20) Darling's sentence is premised on fundamental error because the jury received inadequate guidance with regard to how to consider the aggravating circumstances; (21) trial counsel was ineffective for failing to object to the introduction of nonstatutory aggravators and the State's arguments upon such aggravators; (22) trial counsel was ineffective for failing to object to comments, questions, and instructions that inaccurately and unconstitutionally diluted the jury's sense of responsibility towards sentencing; (23) Darling was denied effective assistance of postconviction counsel because of rules prohibiting counsel from interviewing jurors to determine if constitutional error was present; (24) trial counsel was ineffective for failing to object to overbroad and vaguely argued aggravating circumstances; (25) execution by electrocution is cruel and unusual punishment; (26) Florida's capital sentencing statute is unconstitutional because it fails to prevent the arbitrary and capricious imposition of the death penalty; (27) Darling was denied the right to a fair and impartial jury by pretrial publicity and the lack of a change of venue; (28) the Eighth Amendment was violated by the trial court's refusal to consider mitigating circumstances clearly set out in the record; (29) the sentencing order does not reflect an independent weighing or reasoned judgment; (30) Darling was denied a proper direct appeal due to omissions in the record; (31) excessive security measures and shackling denied Darling of a fair trial; (32) the jury and judge were provided with and relied on misinformation with regard to the constitutional magnitude of sentencing Darling to death; (33) trial counsel was ineffective for failing to object to jury instructions that misled the jury to believe that a majority vote is required to recommend life or death; (34) trial counsel was ineffective for failing to argue that Darling's death sentence was predicated on an automatic aggravator; (35) the judgments and sentence must be vacated in light of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); (36) trial counsel was ineffective for failing to request an instruction pursuant to Simmons v. South Carolina, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), and for failing to investigate and present evidence of practical parole ineligibility; (37) trial counsel was ineffective for failing to hire the necessary experts to challenge the State's DNA evidence; and (38) the combination of procedural and substantive errors deprived Darling of a fair trial.
[4] In response to an inquiry by the court, it was determined that a discovery violation may have occurred in a failure to produce certain evidence with regard to the fingerprint evidence requested by the defense. The court ordered the evidence produced so that defense fingerprint expert Melvin Smith could examine the items. However, after the evidence was produced and Mr. Smith examined the items, the defense indicated that they no longer wished to present any testimony with regard to the fingerprint evidence introduced at trial.
[5] This habeas claim was presented to the Court in connection with facts existing prior to the execution of Angel Diaz on December 13, 2006. No events that may have occurred in connection with the Diaz execution have been considered as part of this proceeding.