920 So.2d 769 (2006)
The STATE of Florida, Petitioner,
v.
Duane ARMSTRONG, Respondent.
No. 3D05-2209.
District Court of Appeal of Florida, Third District.
February 15, 2006.
Charles J. Crist, Attorney General, and Katherine Fernandez Rundle, State Attorney, and Fleur J. Lobree, Assistant State Attorney, for petitioner.
Bennett H. Brummer, Public Defender, and Thomas Regnier, Assistant Public Defender, for respondent.
Before WELLS, and CORTIÑAS, JJ., and SCHWARTZ, Senior Judge.
WELLS, Judge.
The State seeks a writ of certiorari to quash an order denying its motion to exclude the testimony of Simon A. Cole, a Ph.D. in Science and Technology Studies,[1] *770 on the subject of latent fingerprint validation. We have jurisdiction to entertain the petition and quash the order. See State v. Pettis, 520 So.2d 250, 252-253 (Fla.1988)(finding certiorari relief appropriate to review a pre-trial order denying the State's motion in limine to preclude inadmissible evidence); State v. Nazario, 726 So.2d 349, 349-50 (Fla. 3d DCA 1999)(citing Pettis and granting the State's petition for writ of certiorari to quash a pre-trial order allowing inadmissible expert testimony at trial).
Duane Armstrong was charged with burglary of an unoccupied dwelling and grand theft, crimes which the State intends to prove primarily through comparison of Armstrong's fingerprints with latent fingerprints recovered from the crime scene. Prior to trial, Armstrong listed Dr. Simon Cole, a self-described historian and sociologist, as an expert witness to testify as to his "informed hypothesis," derived from study of the history of fingerprint analysis, that fingerprint analysis is unreliable because no one has ever proved the long-accepted proposition that no two fingerprints are alike. In this regard, Dr. Cole intended to testify generally about the lack of an objective, scientific study that validates the now widely accepted fingerprint identification analysis process, as well as the lack of uniform standards used for individual fingerprint comparison. Thus, he maintains that the weight a juror should give to the results of such an analysis is questionable. The State sought to preclude Dr. Cole's testimony claiming that his methods were not generally accepted in the mainstream scientific community and that his testimony would only serve to mislead and confuse the jury. Following a Frye[2] hearing, the State's motion was denied.
We quash the order permitting Dr. Cole to testify because his "informed hypothesis" is irrelevant to any material issue. See Fla. Stat. § 90.702 (an expert's opinion "is admissible only if it can be applied to the evidence at trial"); Stano v. State, 473 So.2d 1282, 1285 (Fla.1985)("To be relevant, and, therefore, admissible, evidence must prove or tend to prove a fact in issue."). While Dr. Cole has raised a general concern about the use of latent fingerprint identification analysis in courts across the United States, he has not related that concern to the fingerprint identification made in this case. Dr. Cole concededly has no formal training in latent fingerprint identification analysis; he did not examine the latent fingerprints taken from the crime scene in this case; he does not question the latent fingerprint analysis actually performed in this case; and he has no opinion about the standards or methods used by the fingerprint examiner in this particular case. Dr. Cole's testimony will, therefore, be no more than a general critique of the predicate underlying fingerprinting as a method of identification. His testimony will not be probative as to whether the latent prints lifted from the scene match Armstrong's fingerprints, that is, his testimony will not be probative of Armstrong's guilt or innocence. Consequently, his testimony is not admissible. See Huff v. State, 495 So.2d 145, 147-48 *771 (Fla.1986) (precluding a defense expert from testifying about the likelihood that the crime scene had been inadequately processed or contaminated where said expert "had neither visited the crime scene nor read the testimony or reports of the investigating officers at the scene," and finding that, "at best, [the expert's] testimony would have been a general critique of proper police practice in processing crime scenes"); Stano, 473 So.2d at 1285-86 (disallowing presentation of expert testimony which suggested that some people confess to crimes that they did not commit, where there was no evidence to suggest that the defendant's confession in the case at bar was infirm or tainted).
Armstrong claims that the expert testimony should be allowed because Dr. Cole is not challenging the admissibility of the State's fingerprint evidence, but only the weight a juror should give the evidence. We cannot agree. Notwithstanding his best efforts to the contrary, Dr. Cole's "informed hypothesis" is nothing more than a creative attempt to attack the predicate for the admission of latent fingerprint comparison analysis.[3]
For over a hundred years, fingerprint comparison has been accepted as reliable by every court in the nation and in many courts abroad for the purpose of identification. In Florida, fingerprint evidence has been admissible in criminal prosecutions since at least 1930. See Martin v. State, 100 Fla. 16, 129 So. 112, 116 (1930)("Experience of recent years has shown that one of the most effective means of identifying and apprehending burglars, robbers, and thieves is through bureaus of identification by using the photograph and finger print. This method should be encouraged so long as its application does not result in a miscarriage of justice or violate fundamental rules of evidence."). To date, there have been no reported instances in which the prints from any two fingers or from two individuals have been found to be the same.
Of late, a spate of challenges to the reliability of fingerprint identification has been brought, primarily in the federal courts, premised on the same "informed hypothesis" advanced here. Each has been rejected. See, e.g., United States v. Abreu, 406 F.3d 1304, 1307 (11th Cir.2005)(agreeing with the decisions of other federal circuits and holding latent fingerprint evidence reliable); United States v. Mitchell, 365 F.3d 215, 246 (3d Cir.2004)(holding latent fingerprint identification evidence reliable and thus admissible under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)[4]); United States v. Janis, 387 F.3d 682, 690 (8th Cir.2004)(finding fingerprint evidence to be reliable); United States v. Crisp, 324 F.3d 261, 269-270 (4th Cir.2003)(holding fingerprint analysis to be reliable identification evidence); United States v. Havvard, 260 F.3d 597, 601-02 (7th Cir.2001) (finding fingerprint identification to be reliable); United States v. Sherwood, 98 F.3d 402, 408 (9th Cir.1996)(holding that the trial court did not commit actual error in admitting fingerprint evidence).
These cases, although decided in the context of a defendant's motion to preclude fingerprint identification testimony, confirm that any lack of proof that fingerprints are unique, and the existence of *772 objective standards for defining how much of a latent fingerprint is necessary to conduct a comparison, is irrelevant. Hence, what Dr. Cole cannot do in challenging the admissibility of the State's fingerprint evidence, he equally cannot do here in purportedly challenging the weight of said evidence. Rather, if Armstrong wishes to question the State's comparison of his fingerprints with latent fingerprints recovered from the crime scene, Armstrong should present the jury with his own fingerprint examiner who has performed an independent latent fingerprint analysis.
For these reasons, we find the order denying the State's motion in limine departs from the essential requirements of the law. We therefore grant the petition for writ of certiorari and quash the order.
NOTES
[1] Dr. Cole, an assistant professor at the University of California, Irvine, has a Bachelor's Degree in history from Princeton University and a Ph.D. from Cornell University in Science and Technology Studies, a discipline Dr. Cole describes as being comprised of the study of sociology, history, politics, and the philosophy of science and technology, that is, the study of "how scientific knowledge is made."
[2] Frye v. United States, 293 F. 1013 (D.C.Cir. 1923). Florida courts utilize the Frye test for determining the admission of expert testimony concerning a new or novel scientific principle. See Ramirez v. State, 651 So.2d 1164, 1167 (Fla.1995).
[3] Dr. Cole admits that no court has excluded fingerprint evidence based on his proffered testimony, despite repeated attempts.
[4] See Abreu, 406 F.3d at 1306 (noting that "[t]o assess the reliability of an expert opinion, [Federal courts] consider[] a number of factors, including those listed by the Supreme Court in Daubert").