PER CURIAM.
 

 Ray Lamar Johnston appeals the trial court’s order denying his motion filed under Florida Rule of Criminal Procedure 3.851 to vacate his conviction of first-degree murder and sentence of death. He also petitions this Court for a writ of habe-as corpus.
 
 [1]
 
 For the reasons explained below, we affirm the trial court’s order denying postconviction relief. We also deny the habeas petition.
 

 I. FACTS AND PROCEDURAL HISTORY
 

 Johnston was found guilty of the first-degree murder of Janice Nugent.
 
 Johnston v. State,
 
 863 So.2d 271 (Fla.2003). The evidence presented at trial revealed that Johnston and Nugent were acquaintances as regular patrons of a bar in Tampa.
 
 Id.
 
 at 275. A few weeks before the murder, Johnston had been to Nugent’s house after the two had gone on a date.
 
 Id.
 
 at 275 & n. 3. Later, Nugent’s dead body was discovered in her home by her son-in-law.
 
 Id.
 
 at 274. Her body, clothed only in underwear, was wrapped in a bed
 
 *476
 
 comforter and submerged in her bathtub.
 
 Id.
 
 She had been manually strangled as well as beaten on her buttocks and hips with a blunt instrument.
 
 Id.
 
 There were multiple deep bruises on Nugent’s neck and shoulders from being throttled, and there were defensive bruises and scratches on Nugent’s arms, hands, and face.
 
 Id.
 

 Johnston’s fingerprints were found on a cup in Nugent’s kitchen and on the faucet in Nugent’s bathtub.
 
 Id.
 
 at 275. Shoe tracks consistent with shoes recovered from Johnston’s apartment were found in Nugent’s kitchen.
 
 Id.
 
 And a stain matching Johnston’s DNA profile was found on a sheet in Nugent’s bedroom.
 
 Id.
 

 In imposing the death sentence, the trial court found two aggravating circumstances, one statutory mitigating circumstance, and numerous nonstatutory mitigating circumstances.
 
 [2]
 

 Id.
 
 at 278 & n. 5. On appeal, this Court affirmed Johnston’s conviction and sentence.
 
 Id.
 
 at 286. Johnston subsequently filed a motion for postconviction relief in the trial court, which the trial court denied. Johnston now appeals the denial of postconviction relief. Johnston has also filed a habeas petition raising several claims.
 

 II. JOHNSTON’S POSTCONVICTION CLAIMS
 

 Johnston raises the following eight claims of trial court error and ineffective assistance of counsel; (1) counsel was ineffective for offering the testimony of Johnston’s brother; (2) counsel was ineffective in presenting the mental health mitigation;
 
 *477
 
 (3) counsel was ineffective in allowing the admission of Johnston’s confession to a prior murder; (4) the trial court erred in admitting evidence of Johnston’s prior murder conviction; (5) counsel was ineffective for failing to move to suppress Johnston’s statements to law enforcement; (6) counsel was ineffective for failing to inform the jury that Johnston was medicated during a prior, unrelated trial; (7) counsel was ineffective for failing to object to erroneous jury instructions; and (8) the trial court erred in summarily denying several of Johnston’s claims.
 
 [3]
 
 As explained below, Johnston’s claims of trial court error are without merit. Also, because Johnston has failed to prove that his counsel’s performance was deficient or that any alleged deficient performance prejudiced him, we affirm the trial court’s denial of relief.
 
 See Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 

 A. Testimony of Johnston’s Brother at Penalty Phase
 

 Johnston first claims that his trial counsel was ineffective for offering the testimony of Johnston’s brother, Max Allen, during the penalty phase. Johnston argues that there could be no rational justification for trial counsel to call Allen as a witness and asserts that counsel failed to investigate the potentially damaging content of Allen’s testimony. Johnston claims that these actions by his counsel were unreasonable and resulted in the jury’s eleven-to-one vote to recommend a death sentence. We affirm the trial court’s denial of this claim.
 

 This Court has held that two requirements must be satisfied for ineffective assistance of counsel claims to be successful under the
 
 Strickland
 
 standard: First, a defendant must show that eoun-sel’s actions or omissions were deficient; and second, the deficiency established must further be shown to have so affected the proceeding that confidence in the outcome is undermined.
 
 Schoenwetter v. State,
 
 46 So.3d 535, 545-46 (Fla.2010). To prove counsel’s performance was deficient, a defendant must “identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.”
 
 Strickland,
 
 466 U.S. at 690, 104 S.Ct. 2052. A reviewing court must then, in light of all the circumstances, determine whether “the identified acts or omissions were outside the wide range of professionally competent assistance.”
 
 Id.
 
 However, this Court must strongly presume that defense counsel’s actions were reasonable at the time of the counsel’s conduct.
 
 Id.
 
 at 689, 104 S.Ct. 2052. Any such “strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.”
 
 Howell v. State,
 
 877 So.2d 697, 703 (Fla.2004) (quoting
 
 Occhicone v. State,
 
 768 So.2d 1037, 1048 (Fla.2000)).
 

 To establish prejudice, a defendant must demonstrate that because of counsel’s deficient performance, he was deprived of a fair trial with a rehable result.
 
 Bradley,
 
 33 So.3d at 672 (citing
 
 Strickland,
 
 466 U.S. at 689, 104 S.Ct. 2052). The prejudice requirement is satisfied only if there is a reasonable probability that “but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.”
 
 Strickland,
 
 466 U.S. at 694, 104 S.Ct. 2052. Mere speculation that counsel’s error affected the outcome of the proceeding is insufficient.
 
 Id.
 
 
 *478
 
 at 693, 104 S.Ct. 2052. And to establish ineffectiveness, both deficient performance and prejudice must be proven.
 
 Id.
 
 at 694, 104 S.Ct. 2052.
 

 The trial court held an evidentiary hearing on this claim and determined that counsel was not ineffective because the strategic decision to offer Allen’s testimony was reasonable. The record shows that calling Allen as a witness was part of the defense strategy to portray Johnston as an individual with an extensive, documented history of mental health disorders. On the stand, Allen testified as an eyewitness to Johnston’s mental problems during youth, including his psychiatric hospitalization and extremely disturbed behavior. Defense counsel explained that Allen’s testimony was intended to give context to the mental health mitigation and to confirm that Johnston showed signs of frontal lobe issues since childhood, received shock therapy, and was overmedicated. The defense trial team had extensively discussed the strategy behind calling Allen as a witness. Further, when asked whether he desired the jury to recommend a life sentence for his brother, Allen stated, “I don’t think that it’s right for th[e] state to kill him.” For all these reasons, counsel’s strategic decision to call Allen to testify in the penalty phase was not deficient performance, and we affirm the trial court’s denial of relief on this ineffectiveness claim.
 
 [4]
 

 B. Presentation of Mental Health Mitigation
 

 Johnston next argues that trial counsel was ineffective for failing to present significant information regarding his mental health issues. At the evidentiary hearing on this issue, Johnston offered the testimony of forensic expert Dr. Mark Cunningham, who testified that counsel did not put mental health mitigation evidence before the jury in sufficient detail. Johnston further argued that counsel diminished the significance of the available mitigation by referring to it as “stuff.” We disagree.
 

 Counsel may “rely on the evaluations conducted by qualified mental health experts, even if, in retrospect, those evaluations may not have been as complete as others may desire.”
 
 Darling v. State,
 
 966 So.2d 366, 377 (Fla.2007). This Court has
 
 *479
 
 held that counsel will not be rendered ineffective for relying on a mental health expert’s opinion during the penalty phase, even if in hindsight the testimony is “somehow incomplete or deficient in the opinion of others.”
 
 Id.
 

 Here, Johnston’s counsel relied on the testimony of two qualified mental health experts during the penalty phase. The defense presented Dr. Krop, a board-certified neuropsychologist, who testified to Johnston’s long history of behavioral problems, his frontal lobe impairment, organic brain syndrome, and corroborating PET scan results. The defense also presented Dr. Maher, a board-certified forensic psychiatrist, who testified after interviewing Johnston and reviewing the following information: Johnston’s hospital, jail, and prison medical records; Dr. Krop’s findings and test results; and examination and test results from two other doctors who treated Johnston. Dr. Maher further explained multiple neurodiagnostic test results and testified that Johnston suffered from organic brain injury or frontal lobe damage. Thus, these experts presented thorough analyses for the defense on the issue of mental health mitigation, and counsel’s reliance on their testimony cannot be second-guessed in hindsight.
 
 See id.
 
 The trial court properly denied Johnston relief on this claim.
 

 C. Admission of Johnston’s Confession to Prior Murder
 

 Johnston also claims that his trial counsel was ineffective for allowing his confession to another murder to be introduced at trial. During the guilt phase, the State read into evidence Johnston’s confession made to the jury during the penalty phase of his prior trial for the first-degree murder of Leanne Coryell.
 
 [5]
 
 Johnston argues that defense counsel during the Cor-yell penalty phase should have known about the future charge forthcoming for the murder of Ms. Nugent and was ineffective for allowing Johnston to confess to the murder of Ms. Coryell without warning him that such a confession could be used against him in a future prosecution. We disagree.
 

 Johnston raises a claim that is not cognizable and therefore does not merit relief. It is axiomatic that an ineffective assistance of counsel claim must be based on the actions of defense counsel in the trial under review. Here, Johnston is claiming that his defense counsel was deficient under
 
 Strickland
 
 in a prior, unrelated murder trial. The Coryell and Nugent trials were entirely distinct, separated in time by several months, with different juries, different victims, and different defense teams. Defense counsel’s allegedly deficient performance at one trial cannot constitute ineffective assistance at another, entirely separate trial. Johnston has not alleged in this claim that any actions taken by defense counsel in the case under review were deficient. Therefore, this ineffective assistance of counsel claim must fail.
 

 D. Admission of
 
 Williams
 
 [6]
 

 Rule Evidence of Johnston’s Murder Conviction
 

 At trial, evidence of Johnston’s conviction for the Coryell murder was admitted under the
 
 Williams
 
 rule. The trial court
 
 *480
 
 based its admission of this similar collateral crime on various facts, which it set forth in a “detailed, written pretrial order on the issue.”
 
 Johnston,
 
 863 So.2d at 281.
 
 [7]
 
 The trial court also emphasized pretrial the importance of medical examiner Dr. Julia Martin’s testimony regarding the similarity of the pattern bruising on the victims’ buttocks to the admission of the
 
 Williams
 
 rule evidence.
 

 Johnston now argues that the State presented misleading testimony from Dr. Martin in order to obtain admission of the
 
 Williams
 
 rule evidence. Johnston asserts that Dr. Martin offered false opinions regarding the implement used to beat Ms. Nugent on the buttocks and that this misleading testimony resulted in the prejudicial admission of Johnston’s prior murder conviction. We disagree.
 

 As the trial court correctly concluded, this claim is procedurally barred because it has already been raised and decided on direct appeal. Before trial, the State filed an Additional Notice of Discovery that accurately summarized the content of Dr. Martin’s telephone contact log regarding possible causes of the bruises on Nugent’s buttocks. In response, Johnston filed a motion to reconsider the
 
 Williams
 
 rule order allowing evidence of Johnston’s prior murder conviction, arguing that the disclosure demonstrated that Dr. Martin no longer believed the pattern bruises were caused by a belt. The trial court considered and denied this argument regarding Dr. Martin’s “true opinions.”
 

 This Court thoroughly discussed and denied this claim on direct appeal.
 
 See Johnston,
 
 863 So.2d at 280-83. We found no error in the trial court’s admission of the
 
 Williams
 
 rule evidence because “there are unusual and pervasive similarities between the Coryell and Nugent murders” and “[t]he dissimilarities between the two murders are insubstantial and are partially explained by Johnston’s own confession in the Coryell case.”
 
 Id.
 
 at 283. Specifically regarding Dr. Martin’s testimony, this Court stated the following:
 

 The similar belt pattern injuries on the buttocks of both victims are possibly the most unique similarities between the Nugent and Coryell murders. Johnston alleges that the State failed to show that these injuries were similar. However, Dr. Martin, the medical examiner in the Nugent case, testified that within a reasonable medical probability, one or more of the patterned injuries on Nugent’s buttocks came from a belt. Likewise, the medical examiner in the Coryell case testified that Coryell was beaten on the buttocks with a belt. During the penalty phase of the Coryell case, Johnston confessed to beating Coryell’s buttocks with a belt.
 

 Id.
 
 at 282. Therefore, because the admission of
 
 Williams
 
 rule evidence based on Dr. Martin’s testimony has already been challenged and upheld, Johnston’s claim is procedurally barred.
 

 Moreover, Johnston’s claim on this issue is without merit. His contention that the State committed a
 
 Giglio
 

 [8]
 

 violation in presenting Dr. Martin’s testimony is unfounded. A
 
 Giglio
 
 violation occurs when (1) the prosecutor presents or fails to
 
 *481
 
 correct false testimony, (2) the prosecutor knows the testimony is false, and (B) the false evidence is material.
 
 See Guzman v. State,
 
 941 So.2d 1045, 1050 (Fla.2006). Here, there was no
 
 Giglio
 
 violation because Dr. Martin did not give false testimony. The trial court rejected Johnston’s assertion that Dr. Martin testified with false opinions that were contrary to her true opinions, explaining that Dr. Martin’s testimony at the evidentiary hearing refuted this allegation. Indeed, in her pretrial contact log and at trial, Dr. Martin opined that some of the bruises on Ms. Nugent’s buttocks were consistent with a belt. And at the evidentiary hearing, Dr. Martin testified that she stands by her trial testimony and explained her testimony that the pattern bruises were consistent with a belt. Therefore, as the trial court correctly concluded, Dr. Martin’s testimony was consistent throughout the case, and nothing indicates that the basis for the
 
 Williams
 
 rule evidence was unfounded. Accordingly, we affirm the trial court’s denial of relief on this claim.
 

 E. Failure to Move to Suppress Johnston’s Statements to Law Enforcement
 

 Johnston also argues that statements he made to law enforcement were obtained in violation of his constitutional rights and that guilt phase counsel was ineffective for failing to challenge the admissibility of these statements. We disagree.
 

 First, Johnston’s claim that his statements to law enforcement officers were obtained in violation of his constitutional rights is proeedurally barred because it could have been but was not raised on direct appeal.
 
 See Willacy v. State,
 
 967 So.2d 131, 141 (Fla.2007) (“Claims that could have been brought on direct appeal are proeedurally barred in postconviction proceedings.”). On direct appeal, Johnston challenged the admission of particular statements made to Detectives Noblitt and Stanton on the basis of relevance and did not raise any challenge to the method in which any statements were obtained from him.
 
 See Johnston,
 
 863 So.2d at 278-80. Therefore, Johnston is not entitled to relief on his claim that trial court erred in admitting the statements at issue because that argument has been waived.
 

 Johnston’s additional claim that his guilt phase counsel was ineffective for failing to move to suppress the statements at issue is also without merit. “[Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.” Oc
 
 chicone,
 
 768 So.2d at 1048. Here, as counsel explained during the postconviction evi-dentiary hearing, there was a strategic reason for allowing the introduction of Johnston’s statements regarding his alleged activity in the victim’s house. Because Johnston did not wish to testify at trial, defense counsel wanted an alternative method for getting an explanation before the jury as to why physical evidence placed Johnston inside the victim’s home. As counsel testified, he saw the statements to law enforcement as a strategic means of introducing an explanation for why Johnston’s fingerprints were in the victim’s bathroom, where the victim’s body was found. And as the trial court correctly concluded, counsel’s reasoned strategic decision to utilize Johnston’s exculpatory statements to law enforcement does not constitute deficient performance.
 
 See Strickland,
 
 466 U.S. at 690, 104 S.Ct. 2052 (explaining that counsel’s performance is deficient only if “the identified acts or omissions were outside the wide range of professionally competent assistance”).
 
 *482
 
 Therefore, counsel’s decision not to suppress the statements at issue does not constitute ineffective assistance and Johnston is not entitled to relief on this claim.
 

 F.Failure to Inform Jury that Johnston was Medicated During Trial
 

 Johnston next argues that deficient performance occurred during the Coryell trial, when counsel did not instruct the jury that Johnston was on psychotropic medications at the time of his testimony and confession at trial. The Coryell trial was an entirely separate proceeding from the Nugent case under review here, involving a different crime and a different jury. Therefore, Johnston’s allegations of deficient performance are irrelevant to the trial under review, and he is not entitled to relief.
 

 Additionally, the defense’s failure to inform the Nugent guilt phase jury of the various medications that Johnston was taking during the Coryell trial and their side effects was not deficient performance. As the transcript from the evidentiary hearing reflects, Littman had no reason to believe that Johnston was “out of his mind on drugs” when he testified in the Coryell trial. Furthermore, because the defense strategically chose to offer Johnston’s confession during the Coryell penalty phase in hopes of obtaining a life sentence, it would be duplicitous for defense counsel to turn around and attack that confession as unknowing or defective. Therefore, the trial court correctly rejected this claim.
 

 G.Failure to Object to Erroneous Jury Instructions
 

 Johnston next claims he is entitled to relief for counsel’s failure to object to a verbal jury instruction containing a one-word misstatement. We disagree.
 

 Johnston’s claim that counsel was ineffective for failing to challenge to the jury instructions is without merit because Johnston cannot establish prejudice. Even assuming it was deficient for counsel to fail to object, there is no reasonable probability that the jury would have voted instead for a life sentence. Although the verbal instructions given to the jury contained one wrong word, Johnston has not established that the single word could have misled the jury into believing in an incorrect standard for proving the mitigating circumstances. The word was part of a statement by the judge that “a mitigating circumstance
 
 may not
 
 be proved beyond a reasonable doubt. If you are reasonably convinced that a mitigating circumstance exists, you may consider it as established.” This misstatement was made while the judge read the jury instructions aloud, but the jury was later provided with a correct written copy of the instruction on mitigation, which stated that “a mitigating circumstance
 
 need not
 
 be proved beyond a reasonable doubt. If you are reasonably convinced that a mitigating circumstance exists, you may consider it as established.” Thus, the written instructions, which the jury took into the deliberation room while reaching a verdict, were completely correct. Therefore, there is no reasonable probability that any error in the verbal instructions could have encouraged the jury to vote for death. Accordingly, there is no reasonable probability that any alleged deficient performance in counsel’s failure to object undermines confidence in the outcome of the penalty phase, and Johnston is not entitled to relief.
 

 H.Tidal Court’s Summary Denial of Several Claims
 

 Johnston also argues that the lower court erred in refusing to grant an eviden-tiary hearing on several postconviction claims that required factual determination. We disagree.
 

 
 *483
 
 The lower court correctly concluded that Johnston was not entitled to an evidentiary hearing on various ineffective assistance claims he raised in his postcon-viction motion below,
 
 [9]
 
 because his allegations were facially insufficient. “A hearing is warranted on an ineffective assistance of counsel claim only where a defendant alleges specific facts, not conclusively rebutted by the record, which demonstrate a deficiency in counsel’s performance that prejudiced the defendant.”
 
 Pagan v. State,
 
 29 So.3d 938, 955 (Fla.2009). Because Johnston presented only bare con-clusory allegations on these several issues, he was not entitled to an evidentiary hearing on the claims. Therefore, the lower court did not err in summarily denying these legally insufficient claims, and Johnston is not entitled to relief.
 
 See Hannon v. State,
 
 941 So.2d 1109, 1138 (Fla.2006).
 

 I. Failure to Challenge the Reliability of Fingerprint Evidence
 

 Johnston next alleges that counsel was ineffective for failing to challenge the reliability of fingerprint evidence introduced at trial. Johnston asserts that counsel should have (1) called an expert witness to testify that fingerprinting is unreliable science and (2) objected to a question posed to the State’s fingerprint expert. We disagree.
 

 Johnston specifically argues that counsel was ineffective for failing to consult and present an expert, namely Dr. Simon Cole, to rebut the State’s forensic fingerprint evidence. The trial court denied this sub-claim after reviewing Dr. Cole’s proffered testimony and finding that the testimony would not have been admissible.
 
 See Owen v. State,
 
 986 So.2d 534, 546 (Fla.2008) (“Trial counsel cannot be deemed ineffective for failing to present inadmissible evidence.”). The trial court relied on
 
 State v. Armstrong,
 
 920 So.2d 769, 770 (Fla. 3d DCA 2006), in which the Third District Court of Appeal specifically found inadmissible Dr. Cole’s testimony in an unrelated case.
 
 [10]
 
 As in the Third District’s case, Dr. Cole’s opinion as to the
 
 *484
 
 reliability of fingerprint evidence had no connection to the latent fingerprints analyzed in this case and was not based on relevant facts. The trial court was therefore correct in determining that the proffered testimony would have been inadmissible and that counsel was not deficient for failing to present it.
 

 Additionally, the trial court did not err in concluding that counsel’s failure to object to a particular question regarding fingerprint evidence did not constitute ineffective assistance. Johnston claims defense counsel should have objected to a question by the State on redirect on the basis that it addressed lay knowledge not proper for expert testimony. To the contrary, the State’s question clarified information the defense elicited from expert Jones on cross-examination and properly sought expert opinion about the effect of fingerprint overlays on the ability to do a comparison analysis on a given fingerprint — not something that is within common lay knowledge. Therefore, Johnston has not shown that there was any basis for an objection by the defense, and Johnston has not established any probability that the trial court would have sustained such an objection. And because trial counsel cannot be deemed ineffective for failing to raise a meritless challenge, Johnston did not satisfy his burden to demonstrate deficient performance under
 
 Strickland. See Heath v. State,
 
 3 So.3d 1017, 1033 (Fla.2009). Accordingly, the trial court correctly rejected this claim.
 

 III. JOHNSTON’S HABEAS CLAIMS
 

 Johnston also filed a petition for habeas corpus raising five issues. As explained below, because all of Johnston’s claims are either without merit or procedurally barred, we hold that Johnston is not entitled to relief.
 

 A. Challenge to Death Sentence Based on Johnston’s Mental Status
 

 Johnston first claims that his mental disorders constitutionally bar imposition of the death penalty. Citing
 
 Atkins v. Virginia,
 
 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), and
 
 Roper v. Simmons,
 
 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), Johnston seeks relief based on his mental status. Because Johnston’s claim is both procedurally barred and without merit, we deny relief.
 

 This Court has repeatedly held that there is no per se bar to imposing the death penalty on individuals with mental illness.
 
 See, e.g., Nixon v. State,
 
 2 So.3d 137, 146 (Fla.2009);
 
 Lawrence v. State,
 
 969 So.2d 294, 300 n. 9 (Fla.2007). Specifically, this Court has recently considered and rejected the precise arguments that Johnston raises here regarding the evolving standards of decency in death penalty jurisprudence.
 
 See Johnston v. State,
 
 27 So.3d 11, 26-27 (Fla.2010) (denying David Eugene Johnston’s claim, based on the reasoning in
 
 Atkins
 
 and
 
 Roper,
 
 that mental illness is a bar to execution),
 
 cert, denied,
 
 — U.S. -, 131 S.Ct. 459, 178
 
 *485
 
 L.Ed.2d 292 (2010). And this Court has made clear that we “find no reason to depart from these precedents.”
 
 Id.
 
 at 27. Accordingly, we hold that Johnston is not entitled to relief on this claim.
 

 B. Duplicate Claims
 

 Johnston raises four additional claims in habeas that are procedurally barred because they are mere duplications of issues raised in his instant postconviction motion: (1) ineffective assistance of counsel for failure to object to the verbal jury instructions, (2) ineffective assistance of counsel for failure to challenge the fingerprint evidence, (3) ineffective assistance of counsel for failure to move to suppress Johnston’s statements to law enforcement,
 
 [11]
 
 and (4) trial court error in admitting the
 
 Williams
 
 rule evidence of the Coryell murder. A habeas petition may not be used to litigate issues that have already been raised in a postconviction motion.
 
 See McDonald v. State,
 
 952 So.2d 484, 498 (Fla.2006). Therefore, Johnston’s petition for writ of habeas corpus is denied.
 

 IV. CONCLUSION
 

 Based on the foregoing, we affirm the trial court’s order denying Johnston’s rule 3.851 motion, and we deny his habeas petition.
 

 It is so ordered.
 

 CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 [1]
 

 . We have jurisdiction.
 
 See
 
 art. V, § 3(b)(1), (9), Fla. Const.
 

 [2]
 

 . The two aggravators were (1) Johnston was previously convicted of a felony involving the use or threat of violence to the person, and (2) Nugent's murder was especially heinous, atrocious, or cruel (HAC).
 
 Id.
 
 at 278 n. 5. The sole statutory mitigator was that Johnston’s capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of law was substantially impaired.
 
 Id.
 
 n. 6. The trial court considered the following nonstatutory mitigating circumstances:
 

 (1) defendant has a long history of mental illness [slight weight]; (2) defendant suffers from a dissociative disorder [no weight]; (3) defendant suffers from seizure disorder and blackouts [no weight]; (4) defendant did not plan to commit the offense in advance [not proven; no weight]; (5) defendant’s acts are closer to that of a man-child than that of a hard-blooded killer [not proven; no weight]; (6) defendant is haunted by poor impulse control [no weight]; (7) defendant is capable of strong, loving relationships [slight weight]; (8) defendant excels in a prison environment [slight weight]; (9) defendant could work and contribute while in prison [slight weight]; (10) defendant has extraordinary musical skills [no weight]; (11) defendant obtained additional education while he was in prison [no weight]; (12) defendant served in the U.S. Air Force and was honorably discharged [slight weight]; (13) defendant received a certificate of recognition from the Secretary of Defense for services rendered [slight weight]; (14) defendant excelled and was recommended for early termination while on parole [slight weight]; (15) defendant was a productive member of society after his release from prison [slight weight]; (16) defendant turned himself in to the police [slight weight]; (17) defendant demonstrated appropriate courtroom behavior during trial [slight weight]; (18) defendant has tried to conform his behavior to normal time after time [no weight]; (19) defendant has a special bond with children [no weight]; (20) defendant has the support of his mother, brother, and sister [slight weight]; (21) defendant has been a good son, brother, and uncle [no weight]; (22) defendant has a mother, sister, three brothers, three nieces, and two nephews who love him very much [slight weight]; (23) defendant maintained a Florida driver's license [no weight]; (24) defendant maintained credit cards and a bank account [no weight]; (25) defendant can be sentenced to multiple consecutive life sentences and will die in prison [no weight]; (26) the totality of the circumstances does not set this murder apart from the norm of other murders [no weight].
 

 Id.
 
 n. 7.
 

 [3]
 

 . Because we find Johnston’s individual claims are without merit, we also deny his claim of cumulative error.
 
 See Bradley v. State,
 
 33 So.3d 664, 684 (Fla.2010).
 

 [4]
 

 . The trial court also denied relief on Johnston's subclaim that penalty phase counsel was ineffective for allegedly belittling Johnston, taking an adversarial position against Johnston, and making light of the mitigation. When denying this subclaim, the trial court discussed three allegedly ineffective actions by penalty phase counsel: (1) comments regarding victim impact statements; (2) the use of the word "stuff” in reference to mitigation evidence; and (3) a belittling response to Johnston's attempts to get counsel's attention. First, the trial court determined that Johnston mischaracterized counsel's statements during voir dire and that counsel had simply explained the concept of victim impact statements. Second, the trial court concluded that Johnston took counsel’s reference to "stuff” during a long discussion of Johnston;s mental health mitigation out of context. And considering the actual context in which counsel used the word "stuff" (when arguing that the mental health mitigation was not just "stuff” made up two weeks before trial), Johnston had not established prejudice. Third, the trial court concluded that counsel’s allegedly belittling response to Johnston’s attempt to get that counsel’s attention during the penalty phase was not deficient. Counsel testified that he wanted to use the courtroom interactions with Johnston to illustrate Johnston’s impulsiveness and impetuousness. This tactic accorded with the defense’s overall strategy to portray Johnston as an individual with uncontrollable behavior in an effort to emphasize the mental health mitigation evidence and obtain a life sentence. Therefore, we agree with the trial court that Johnston has not demonstrated that defense counsel's actions were "outside the wide range of professionally competent assistance.” See
 
 Strickland,
 
 466 U.S. at 690, 104 S.Ct. 2052. We affirm the denial of this subclaim.
 

 [5]
 

 . The details of Johnston’s murder of Ms. Coryell are set forth in this Court's opinion affirming his conviction and death sentence for that crime.
 
 See Johnston v. State,
 
 841 So.2d 349 (Fla.2002).
 

 [6]
 

 .
 
 Williams v. State,
 
 110 So.2d 654 (Fla. 1959).
 

 [7]
 

 . As this Court summarized on direct appeal, the similarities between the murders included the following: the physical appearance of the victims; the victims' relationships and familiarity with Johnston; the presence of multiple blows from a fist to both victims’ upper bodies and heads; pattern bruises on both victims' buttocks; the manner of strangulation causing death; and the method of disposal of the victims' bodies.
 
 Id.
 
 at 281-82.
 

 [8]
 

 .
 
 Giglio v. United States,
 
 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
 

 [9]
 

 . Johnston challenges the summary denial of the following claims: (1) ineffective assistance of counsel for failure to move for a change of venue, (2) ineffective assistance of counsel for failure to object to the State's improper use of a "golden rule” argument, (3) ineffective assistance of counsel for failure to object to the State’s improper burden shifting during closing argument, (4) ineffective assistance of counsel for failure to have fingerprint testimony read back to the jury, (5) ineffective assistance of counsel for failure to object to jury instructions that shifted the burden to Johnston during the penalty phase, and (6) ineffective assistance of counsel for failure to argue there was a break in the chain of custody of fingerprint evidence. Johnston concedes that the following claims were not suitable for an evidentiary hearing but wishes to preserve them for federal review, pursuant to this Court’s instruction in
 
 Sireci v. State,
 
 773 So.2d 34, 41 n. 14 (Fla.2000): (1) Johnston’s judgment and death sentence must be vacated in light of
 
 Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); (2) execution by lethal injection is cruel and unusual punishment; and (3) counsel was ineffective for failing to request a jury instruction and present mitigating evidence regarding Johnston’s parole eligibility, pursuant to
 
 Simmons v. South Carolina,
 
 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994).
 

 [10]
 

 . In
 
 Armstrong,
 
 920 So.2d at 770, the Third District explained that Dr. Cole's proffered testimony was not probative and was therefore inadmissible:
 

 We quash the order permitting Dr. Cole to testify because his "informed hypothesis” is irrelevant to any material issue.
 
 See
 
 Fla. Stat. § 90.702 (an expert’s opinion "is admissible only if it can be applied to the evidence at trial”);
 
 Stano v. State,
 
 473 So.2d 1282, 1285 (Fla.1985) ("To be relevant, and, therefore, admissible, evidence must prove or tend to prove a fact in issue.”). While Dr. Cole has raised a general concern about the use of latent fingerprint
 
 *484
 
 identification analysis in courts across the United States, he has not related that concern to the fingerprint identification made in this case. Dr. Cole concededly has no formal training in latent fingerprint identification analysis; he did not examine the latent fingerprints taken from the crime scene in this case; he does not question the latent fingerprint analysis actually performed in this case; and he has no opinion about the standards or methods used by the fingerprint examiner in this particular case. Dr. Cole’s testimony will, therefore, be no more than a general critique of the predicate underlying fingerprinting as a method of identification. His testimony will not be probative as to whether the latent prints lifted from the scene match Armstrong's fingerprints, that is, his testimony will not be probative of Armstrong's guilt or innocence. Consequently, his testimony is not admissible.
 

 [11]
 

 . To the extent that Johnston challenges the admission of his statements to law enforcement directly, rather than as an ineffective assistance of counsel claim, that claim is procedurally barred because Johnston did not raise it on direct appeal. A habeas petition may not be used as a vehicle to address issues that could have been raised on direct appeal.
 
 Green v. State,
 
 975 So.2d 1090, 1115 (Fla.2008).