ON MOTION FOR REHEARING

SAWAYA, J.
After we rendered our opinion in this ease, Dale Morgan filed a motion for rehearing contending that he had raised the issue of ineffective assistance of counsel in his brief. We ordered that the parties file supplemental briefs regarding this issue because we did not believe that it had been adequately discussed in the initial briefs. Having reviewed the arguments in the supplemental briefs, we grant the motion, withdraw our prior opinion, and substitute the following in its place.
It is a sad reality that there are too many cases involving parents who sexually abuse their own children. We are confronted with yet another. Morgan was convicted of three counts of sexual battery and sentenced to life in prison for each count. The victim is Morgan’s natural daughter, who was under the age of twelve when she was sexually battered by her father. The questions presented are whether Morgan was convicted of crimes he was not charged with committing and, if so, whether he invited the error by affirmatively agreeing to the jury instruction that became the catalyst for the verdict of guilty and his convictions. We also consider the issue of whether Morgan’s trial counsel rendered ineffective assistance requiring reversal of Morgan’s convictions *510 and a new trial.[1]
A detailed discussion of the facts and circumstances that led to Morgan’s convictions is not necessary to answer the questions just mentioned. The answers will largely depend on the allegations contained in the Amended Information, the jury instructions, the discussion of the jury instructions during the charge conference, and the verdict form. We will begin with the Amended Information.
The State filed an Amended Information charging Morgan with three counts of sexual battery. Each differed only in the time periods and age of the victim: count one alleged a time period between January 1, 1981, and June 30, 1984, and that the victim was under the age of eleven; count two alleged a time period between July 1, 1984, and February 7, 1986, and that the victim was under the age of eleven; and count three alleged a time period between February 8, 1986, and February 7, 1987, and that the victim was less than twelve years of age. Each count alleged a violation of section 794.011(2), Florida Statutes, and each count was identical in alleging that Morgan committed sexual battery “by penetrating or having union with [victim’s] mouth or vagina with his penis or by penetrating [victim’s] vagina with his finger(s).” Although contact of the defendant’s mouth with the victim’s vagina is also a violation of the statute, see Welsh v. State, 850 So.2d 467, 470 (Fla.2003), the State did not make that allegation in the Amended Information.
The trial proceeded with evidence elicited from various witnesses, including the victim and Morgan. After both parties rested, a charge conference was conducted and the jury instructions were reviewed by the attorneys and the trial court. We will discuss the charge conference in more detail a little later. The instructions were read to the jury without objection from Morgan. The jury instructions for each count of sexual battery specifically provided that Morgan could be found guilty if the State proved beyond a reasonable doubt that “Dale Morgan committed an act upon [victim] in which Dale Morgan’s mouth/ tongue penetrated or came in contact with [victim’s] sexual organ (vagina).”
The verdict form included separate sections for each count of the Amended Information. Each section required the jury to determine whether Morgan was guilty or not guilty of sexual battery and further required the jury to answer the following questions, which were identical for each count:
Did the Defendant’s penis penetrate [victim’s] mouth?
Yes_No_
Did the Defendant’s penis come into contact with [victim’s] mouth?
Yes_No_
Did the Defendant’s penis penetrate [victim’s] vagina?
Yes_No_
Did the Defendant’s penis come into contact with [victim’s] vagina?
Yes_No_
Did the Defendant’s tongue/mouth penetrate [victim’s] vagina?
Yes_No_
Did the Defendant’s mouth come into contact with [victim’s] vagina?
*511 Yes_No_
Did the Defendant’s fingers penetrate [victim’s] vagina?
Yes_No_
The two questions concerning the uncharged offenses of Morgan placing his mouth in contact with the victim’s vagina or penetrating her vagina with his mouth or tongue were included at the request of the State. Morgan did not object to the verdict form.
During deliberations, the jury submitted a written query to the trial court asking whether it was required to answer each question unanimously. The trial court and the attorneys agreed to have the court instruct the jury to mark the questions it unanimously answered and to leave the rest blank. The reason the trial court gave that instruction (which is apparently the reason the questions were included on the verdict form) is because the trial court and the attorneys thought that these questions applied to calculate sentencing points under the guidelines. We find that rationale puzzling in light of the fact that at the time Morgan allegedly committed his offenses (the Amended Information alleges between 1981 and 1987), sexual battery on a child under the age of twelve in violation of section 794.011(2), Florida Statutes, was considered a capital crime (albeit not punishable by death) and was therefore not subject to the sentencing guidelines. Laster v. State, 486 So.2d 88, 88 (Fla. 5th DCA 1986) (holding sexual battery on a child under twelve years of age is a capital felony, which is not subject to guidelines sentence); see also § 921.001(4)(a), Fla. Stat. (1987) (excluding capital felonies from guidelines sentencing); Disinger v. State, 526 So.2d 213, 214 (Fla. 5th DCA 1988); Dailey v. State, 501 So.2d 15, 17 (Fla. 2d DCA 1986); Davis v. State, 493 So.2d 82, 83 (Fla. 1st DCA 1986).
Although the stated rationale for including the questions and answers on the verdict form makes no sense, value is derived from them because they specify the offense the jury says Morgan committed. The verdict states that Morgan is guilty as to each count of sexual battery and provides identical answers for the same two questions for each count. The jury answered “No” to the question of whether Morgan’s penis penetrated the victim’s vagina and ‘Tes” to whether Morgan’s mouth came into contact with the victim’s vagina. The rest of the questions were unanswered. Remarkably, the only question to which the jury unanimously answered ‘Tes” is the question regarding the uncharged allegation that Morgan’s mouth had contact with the victim’s vagina. We note parenthetically that the jury could not unanimously agree whether Morgan penetrated the victim’s vagina with his fingers, despite the fact that he confessed to doing so.
Directing our attention to the first question presented, Morgan claims that his convictions must be reversed because he was convicted of offenses he was not charged with committing. He casts blame on the trial court and the State for providing the jury with an instruction on the uncharged offense. He argues that it does not matter that he never objected to the jury instruction because the error is fundamental. The State disagrees, arguing that because the Amended Information cited the correct statute, Morgan was put on notice of the various ways that sexual battery could be committed, and he should not be heard to complain about the fact that the Amended Information did not charge the specific act he was found guilty of committing.
The premise of the State’s argument is correct that sexual battery in violation of section 794.011(2), Florida Statutes, may *512 be committed in various ways. See § 794.011(l)(f), Fla. Stat. (1981) (defining “sexual battery” as “oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object”). We will not attempt to catalogue all of them here. Although the premise may be correct, the foundation upon which the argument rests is faulty.
Due process prohibits an individual from being convicted of an uncharged crime. Cole v. Arkansas, 383 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948); Jaimes v. State, 51 So.3d 445, 448 (Fla. 2010); Crain v. State, 894 So.2d 59, 69 (Fla.2004). Violation of this prohibition constitutes fundamental error. Jaimes; Ray v. State, 403 So.2d 956, 959-60 (Fla. 1981). As a corollary to this constitutional prohibition, it has been an established rule for quite some time that “[w]here an offense may be committed in various ways, the evidence must establish it to have been committed in the manner charged,” Long v. State, 92 So.2d 259, 260 (Fla.1957), and Florida courts have consistently applied this rule since its inception. Deleon v. State, 66 So.3d 391, 393 (Fla. 2d DCA 2011); Brown v. State, 41 So.3d 259, 262 (Fla. 4th DCA 2010); Diaz v. State, 38 So.3d 791, 792 (Fla. 4th DCA 2010); Trahan v. State, 913 So.2d 729, 730 (Fla. 5th DCA 2005); D.R. v. State, 790 So.2d 1242, 1244^45 (Fla. 5th DCA 2001); Zwick v. State, 730 So.2d 759, 760 (Fla. 5th DCA 1999). Consistent with this rule, a criminal defendant is entitled to a trial on the charges contained in the information and may not be prosecuted for uncharged offenses, even if they are of the same general character or constitute alternative ways of committing the charged offense. Trahan; D.R.; Zwick. Citation to the correct statute in an information that specifically alleges the ways the statute was violated to the exclusion of others does not cure the fundamental defect inherent in a verdict that finds the defendant guilty of violating the statute in the ways that were not charged. See Deleon, 66 So.3d at 394 (“We reject the State’s argument that because the information cited the applicable statute, section 812.133, Deleon was put on notice that he could be convicted of carjacking with deadly weapon”).
The precedent just discussed directs us to conclude that Morgan was convicted of uncharged offenses. In view of the compelling evidence the State presented to prove Morgan committed the offense of placing his mouth in contact with the victim’s vagina, its failure to charge that offense in the Amended Information is yet another puzzling aspect of this case. By its lassitude, the State has jeopardized the conviction it obtained, and we must now turn our attention to the second question presented to determine whether the error Morgan complains about was made at his invitation.
The invited error doctrine provides that fundamental error may be waived where defense counsel affirmatively agrees to an improper jury instruction. Universal Ins. Co. of N. Am. v. Warfel, 82 So.3d 47, 65 (Fla.2012) (“Fundamental error is also waived where defense counsel affirmatively agrees to an improper instruction.” (citations omitted)); State v. Lucas, 645 So.2d 425, 427 (Fla.1994); Falwell v. State, 88 So.3d 970, 972 (Fla. 5th DCA 2012); see also Tindall v. State, 997 So.2d 1260, 1261-62 (Fla. 5th DCA 2009); Jimenez v. State, 994 So.2d 1141, 1143 (Fla. 3d DCA 2008); York v. State, 932 So.2d 413, 416 n. 2 (Fla. 2d DCA 2006); Abbamo v. State, 654 So.2d 225, 226 (Fla. 5th DCA 1995). The doctrine is founded on the principle that “‘a party may not make or invite error at trial and then take advantage of the error on appeal.’ ” Shef *513 field, v. Superior Ins. Co., 800 So.2d 197, 202-08 (Fla.2001) (quoting Goodwin v. State, 751 So.2d 587, 544 n. 8 (Fla.1999)). In such instances, the error may not be addressed using a fundamental error analysis and “the matter cannot be raised on direct appeal.” Falwell, 88 So.3d at 973; see also Pickett v. State, 109 So.3d 841, 844 (Fla. 3d DCA 2013) (holding that if the error in the jury instruction constituted fundamental error, the defendant [Pickett] affirmatively agreed to the instruction and “[i]n doing so, Pickett waived his right to raise this issue on appeal”); Spicer v. State, 22 So.3d 706, 707 n. 1 (Fla. 5th DCA 2009) (“Because it was Spicer’s attorney who affirmatively requested the instruction in this case, however, we have not addressed the issue using a fundamental error analysis.”); Caldwell v. State, 920 So.2d 727, 732 (Fla. 5th DCA 2006) (“An instructional mistake does not rise to the level of fundamental error when defense counsel affirmatively requests the deletion or alteration of the jury instruction that subsequently forms the basis of the requested relief in the appellate court.” (footnote omitted)); Weber v. State, 602 So.2d 1316, 1319 (Fla. 5th DCA 1992). We must look to the record to determine whether Morgan affirmatively agreed with the jury instruction regarding the uncharged offense.
The record reveals that after the evidence had been presented by both parties, the trial court thoroughly reviewed the jury instructions with the prosecutor and with Morgan’s attorney. During that charge conference, the prosecutor asked that the jury instruction for each sexual battery count include the instruction that Morgan may be found guilty of sexual battery if the jury finds that “Dale Morgan committed an act upon [victim] in which Dale Morgan’s mouth/tongue penetrated or came in contact with [victim’s] sexual organ (vagina).” The prosecutor specifically asked Morgan’s attorney, “Do you have any objection to that?” and she answered, “No.” The trial court ruled that the instruction would be revised as requested. When the revised instruction was prepared, the trial court again asked Morgan’s attorney about the instruction:
COURT: All right. So what’s your position, then, as to the changes that were just made to Count I, II, and III to the instructions? Does it look like— DEFENSE COUNSEL: They’re acceptable.
COURT: — to the attorneys the changes were made as we discussed?
DEFENSE COUNSEL: Yes, Your Honor.
After the instructions were read to the jury, the court asked the attorneys “if the instructions and the verdict form that I just read and went over with the jurors are those that were agreed upon by all of us at our conference.” Both agreed that they were.
The answer we derive from this record to the second question presented is that Morgan affirmatively agreed to the jury instruction containing the uncharged offenses and thus invited the error. Cases with similar facts confirm this answer is correct. See Pickett, 109 So.3d at 844 (“During the charge conference, when the court explained that it added the word ‘armed’ to the false imprisonment language of the tampering instruction, to determine the degree of the felony under investigation, defense counsel replied: ‘That’s fine.’ In doing so, Pickett waived his right to raise this issue on appeal.”); Falwell, 88 So.3d at 973 (concluding that when the flawed jury instruction regarding self-defense, which provided that the defendant had the burden of proof, was discussed with defendant’s attorney and he answered, “ ‘That’s correct,’ ” he affirma *514 tively agreed to the instruction and waived any fundamental error argument).
We now come to the issue whether Morgan’s trial counsel rendered ineffective assistance. To warrant reversal and a new trial, Morgan must establish that: 1) counsel’s actions were deficient; and 2) the deficiency so affected the trial that confidence in the outcome is undermined. Strickland, v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Johnston v. State, 70 So.3d 472, 477 (Fla. 2011). The second requirement bears the moniker “prejudice prong,” see Merck v. State, 124 So.3d 785, 796 (Fla.2013), and requires that Morgan establish that he was “deprived of a fair trial with a reliable result.” Johnston, 70 So.3d at 477. But Morgan is asking this court to consider this claim on the merits in his direct appeal, and it is a rare instance that appellate courts may do so. Robarás v. State, 112 So.3d 1256, 1267 (Fla.2013). Those rare instances occur when the ineffectiveness is apparent on the face of the record and it would be a waste of judicial resources to require the claim be resolved by the trial court. Id.
We have discussed in detail the errors that are clearly apparent on the face of this record, and we will not repeat them here. Suffice it to say that we believe the deficiency requirement was established by trial counsel’s failure to object to the jury instructions that included offenses that were not charged in the Amended Information filed by the State. Not only did counsel fail to object, she agreed to the instructions, thereby inviting the error. The prejudice prong is clearly established because Morgan was deprived of a fair trial with a reliable result when he was convicted of offenses that he was not charged with committing.
We conclude that in light of all of the circumstances of this case, the identified deficient acts of Morgan’s trial counsel “were outside the wide range of professionally competent assistance,” Strickland, 466 U.S. at 690, 104 S.Ct. 2052; Johnston, 70 So.3d at 477 (quoting Strickland), and that “there is a reasonable probability that ‘but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ ” Johnston, 70 So.3d at 477 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052). The ineffectiveness of Morgan’s trial counsel is readily apparent on the face of this record, and we believe that it would be a waste of judicial resources to require that the claim be resolved by the trial court. We reverse Morgan’s convictions and remand this case to the trial court for a new trial.
REVERSED and REMANDED.
EVANDER and BERGER, JJ., concur.

. Morgan also raises the following issues that will not be discussed further: (1) the evidence was insufficient to prove that he committed the crime of capital sexual battery; (2) fundamental error occurred when he was convicted of two nonexistent crimes; and (3) the admission of evidence of uncharged collateral crimes constituted reversible error. These issues are rendered moot by virtue of the conclusion we reach regarding the ineffective assistance of counsel claim.